UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONSUMER FINANCIAL PROTECTION
BUREAU,

           Petitioner,

v.                                        Case No. 21-mc-206-JWL

INTEGRITY ADVANCE, LLC and
JAMES R. CARNES,

           Respondents.

## **ORDER**

This miscellaneous action arises from administrative proceedings initiated back in 2015, alleging violations of various federal consumer financial laws through the operation of a payday-lending business. On January 11, 2021, the petitioner, Consumer Financial Protection Bureau ("the Bureau"), issued a final order against the respondents, Integrity Advance, LLC ("Integrity"), and one of Integrity's owners, James R. Carnes, requiring both Integrity and Carnes to pay restitution in the amount of nearly $38.5 million; Integrity to pay a civil penalty of $7.5 million; and Carnes to pay a civil penalty of $5 million. When Integrity and Carnes failed to pay these amounts, the Bureau filed a petition in this court seeking enforcement its final order. On July 30, 2021, U.S. District Judge John W. Lungstrum filed a memorandum and order which granted judgment enforcing the Bureau's administrative order.[1] On August 30, 2021 the Bureau served Carnes with interrogatories

---

[1] ECF No. 21.

1

and requests for production of documents to enable it to collect. On December 8, 2021, the Bureau filed a motion to compel Carnes to produce responses to the Bureau's post-judgment interrogatories and document requests.[2] For the reasons discussed below, the Bureau's motion is granted.

**Analysis**

The Bureau is asking the court to overrule certain objections asserted by Carnes and to order him to serve complete answers. The parties' disputes center primarily on two issues, over which the court finds counsel have sufficiently conferred as required by D. Kan. Rule 37.2:[3] (1) whether the Bureau is entitled to discovery over the nearly eight-year period sought, or whether discovery should be limited to the six-year period proposed by Carnes; and (2) whether the Bureau is entitled to information concerning the Melissa C. Carnes Revocable Trust ("MCC Trust"), a trust established in 2010 by Carnes' wife, Melissa Carnes.

The Federal Debt Collection Procedures Act ("FDCPA") provides the "exclusive civil procedures for the United States … to recover a judgment on a debt."[4] Section 3015 of the FDCPA states the United States "may have discovery regarding the financial

---

[2] ECF No. 32.

[3] Pursuant to D. Kan. Rule 37.2, the court "will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 … unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion."

[4] 28 U.S.C. § 3001.

condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt."[5]

Rule 69 of the Federal Rules of Civil Procedure governs the execution of a judgment and provides that a judgment creditor "may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Rule 26(b)(1) establishes the general scope of discovery and permits the parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[6] Courts have interpreted the scope of post-judgment discovery *broadly* to include the discovery of assets upon which execution can be made.[7] Discovery is also allowed to find out about assets that have been fraudulently transferred or are beyond the reach of execution, as well as information "which could reasonably lead to the discovery of concealed or fraudulently transferred assets."[8]

**Temporal-Scope Objections**

---

[5] 28 U.S.C. § 3015(a).

[6] The proportionality standard takes into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

[7] *See Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. 05-2001, 2009 WL 2951120, at *7 (D. Kan. Sept. 10, 2009) (citing *Fed. Deposit Ins. Corp. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995)).

[8] *Id.* (citations omitted).

Carnes has asserted temporal-scope objections in response to Interrogatory Nos. 4, 11-14, 18, 19, and 21, and Document Requests Nos. 1-3, 6, 7, 9-16, and 19-22, all of which seek financial information for the period between January 1, 2014 and October 21, 2021.[9] The Bureau claims it's entitled to discovery over this near-eight-year period because during that time, Carnes was aware of the Bureau's investigation and may have concealed or transferred assets. Specifically, the Bureau notes that in January 2013, it served a civil investigative demand ("CID") on Integrity that would have put Carnes—Integrity's CEO— on notice of the investigation; that Integrity produced documents and interrogatory responses to the Bureau in October and December 2013 (a fact of which Carnes "would likely have been aware"); and that Carnes "certainly would have known that the investigation was progressing throughout 2014 given that he was required to testify under oath at an investigational hearing in June 2014."[10]

The Bureau argues its investigation combined with multiple asset transfers and purchases by the MCC Trust, specifically claiming that in the summer of 2014, Carnes sold a family vacation property for $2.8 million, and that the MCC Trust retained the proceeds. The Bureau also cites Carnes' testimony from a July 2016 administrative proceeding, stating he obtained at least $20 million through the 2012 sale of Hayfield Investment Partners (some of which was received via multi-million dollar payments between

---

[9] The full text of the interrogatories and requests for production are contained in ECF No. 33-2, and the court finds it unnecessary to restate them herein.

[10] ECF No. 33 at 9.

4

November 2013 and November 2015), and argues the Bureau's entitled "to understand how Carnes [now] claims to have less than $1 million in assets.[11]

Carnes counters a six-year discovery period is appropriate, arguing "it balances the probative value of older information with the heightened burden of obtaining it" and because it comports with the six-year statute of limitations for fraudulent transfers contained in the FDCPA, 28 U.S.C. § 3306(b).[12] In support of his argument that the limitations period should serve as a discovery cutoff, Carnes cites *Oppenheimer Fund, Inc. v. Sanders* for the general proposition that "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken, or to events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case."[13] Carnes then argues the Bureau hasn't demonstrated the relevance of information beyond the six-year period, first claiming he and Melissa Carnes jointly conveyed the above-referenced vacation property to the MCC Trust in 2010 (i.e., three years before the Bureau served its CID), and that the MCC Trust—not Carnes—conveyed the property to the third party in 2014. Carnes claims the sale of Hayfield Investment Partners similarly fails to support an eight-year discovery period because the sale occurred in 2012, i.e., prior to the Bureau serving its CID.

---

[11] ECF No. 38 at 5–6.

[12] ECF No. 37 at 5.

[13] 437 U.S. 340, 352 (1978).

In its reply brief, the Bureau disputes that the limitations period serves as a discovery cutoff, but also argues that the statute of limitations here is *not* limited to six years in light of the FDCPA's discovery provision.  Citing 28 U.S.C. § 3306(b)(1), the Bureau asserts that "when transfers are made with actual intent to hinder, delay, or defraud a creditor, the Bureau may seek remedies with respect to transfers beyond the six years, as long as it is within two years after the transfer or obligation could have reasonably been discovered by the Bureau."[14] The Bureau also points out that despite Carnes' claim that his conveyance of the family vacation property is irrelevant because it occurred in 2010, an August 2014 warranty deed documenting the sale of the property states it's being sold by "Melissa C. Carnes *and James R. Carnes, Individually* and as Trustees" of the MCC Trust, and the document is signed by Carnes in his individual and trustee capacity.

The court finds responsive information over the eight-year period requested plainly relevant for the reasons set forth by the Bureau.  The court is unpersuaded that the FDCPA's six-year limitations period serves as a discovery cutoff in light of this finding, and in light of the FDCPA's discovery provision.   The court rejects Carnes' boilerplate objection that each of the above-referenced interrogatories and requests is "overbroad and unduly burdensome in scope because it seeks information for over 7 years."[15]  A party asserting undue burden as an objection must support that objection with an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery

---

[14] ECF No. 38 at 4.

[15] ECF No. 33 at 5.

6

request.[16] Carnes has not offered any support for its objection, instead only vaguely referencing the "significant burden Carnes—an individual debtor—has faced to gather the requested documents and information for even the last two years."[17] Carnes has failed to provide the court any basis to assess his burden in responding to the Bureau's discovery.

Carnes' temporal-scope objections in response to Interrogatory Nos. 4, 11-14, 18, 19, and 21, and Document Requests Nos. 1-3, 6, 7, 9-16, and 19-22 are overruled.

**Melissa C. Carnes Revocable Trust**

Carnes has objected to Interrogatory Nos. 3-11, 13-19, 21, and 22, and Document Request Nos. 1, 2, 6, 7, 10, 20, and 21 as overbroad, not relevant, and unduly burdensome because they seek information and documents regarding the assets of non-parties. Carnes argues he cannot be compelled to produce such discovery because: (1) Rule 45 is the proper vehicle for the Bureau to conduct discovery into the assets of non-parties; (2) Carnes has already agreed to identify information relating to transfers, if any, from Carnes to Melissa Carnes and the MCC Trust; (3) Carnes lacks possession, custody, or control over Melissa Carnes' and the MCC Trust's information; and (4) requiring Carnes to answer discovery about assets of non-parties is unduly burdensome.

---

[16] *Fish v. Kobach*, Nos. 16-2105-JAR, 15-9300-JAR, 2016 WL 893787, at *1 (D. Kan. Mar. 8, 2016); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004) and *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003) (overruling objection of undue burden based in part on lack of affidavit or other proof)).

[17] ECF No. 37 at 7.

7

The court first addresses Carnes' relevance objection. The Bureau argues real property and other assets purchased and held by the MCC Trust are relevant, observing that during a time period when Carnes alleges his assets dwindled from at least $20 million to less than $1 million, "the MCC Trust appears to have become asset-rich."[18] The Bureau specifically notes three sales of real property from which the MCC Trust appears to have received a total of approximately $8.7 million:

> Public records reveal that the MCC Trust sold a Key Largo vacation property—transferred to it for $100 by Carnes in 2010—for $2,812,500 in the summer of 2014. The MCC Trust also purchased a property at … Lake Lotawana, which was recorded in Jackson County, Missouri in September 2012, and purchased an original Montana condominium … in Madison County, Montana in 2015. According to Schedule D of James R. Carnes and Melissa C. Carnes' jointly filed 2019 tax return, both properties were sold in 2019; the Lake Lotawana property had a cost basis of $1,148,703 and sold for $1,315,000, and the original Montana Condominium … had a cost basis of $3,775,225 and sold for $4,824,114.[19]

The Bureau also notes the MCC Trust currently holds at least two other properties, including a principal residence and a new Montana vacation home purchased in 2020, for a combined value of almost $7 million of known current real-property assets. Carnes argues information regarding the MCC Trust, a non-party, is irrelevant because the only identified transfer involving both Carnes and the MCC Trust—the sale of the Key Largo vacation property—occurred in 2010, i.e., three years prior to the Bureau serving its CID. The Bureau disputes, however, that the subsequent sale of the Key Largo property in

---

[18] ECF No. 33 at 12.

[19] *Id.* (citations omitted).

August 2014 for $2.8 million can be characterized as being made solely by the MCC Trust, insofar as the warranty deed lists the grantor as "James Carnes, individually and as trustee" of the MCC Trust, and that Carnes was required to sign the warranty deed in both his individual and trustee capacity.[20] The Bureau also points out that the MCC Trust's purchase of the Montana condominium nine months later would have required an additional $1 million "that the MCC Trust may have procured from James Carnes' income, assets or guarantee of financing, given that Melissa Canes has no known employment."[21] Finally, the Bureau contends Carnes regularly deposits his income into a joint account from which he then makes payments that appear to be on behalf of the MCC Trust, including the payment of dues to a Montana country club (membership to which is required of property owners, including the MCC Trust) and significant insurance premiums (most likely for properties held by the MCC Trust).

    Based on the Bureau's assertions, the court finds the information concerning the MCC Trust relevant to Carnes' financial condition, including whether he concealed or transferred assets that could otherwise be used to satisfy the court's judgment. The court overrules Carnes' undue-burden objections, for the same reasons set forth above—i.e., Carnes has failed to provide any explanation, much less evidentiary proof, of the time or expense involved in responding to the Bureau's discovery. Instead, Carnes simply takes issue with having to answer questions and provide records relating to "literally every

---

[20] ECF No. 38 at 12.

[21] *Id.*

9

'tangible asset' or 'intangible asset' he owns," (i.e., the contemplated scope of post-judgment discovery) and points out that having to answer for non-parties would only "multiply this burden."[22] This contention, without more, is insufficient.

Finding the information within the permissible scope of discovery, the court turns to Carnes' assertion that the requested information and documents regarding the MCC Trust are not within his possession, custody, or control. The party moving to compel production has the burden of establishing that there are responsive documents in the responding party's "possession, custody, or control."[23] To be sure, "[a] party need not have actual possession of documents to be deemed in control of them. A party that has a legal right to obtain certain documents is deemed to have control of the documents."[24]

The Bureau argues Carnes has a legal right to obtain responsive documents, claiming the trust agreement provides Carnes, as trustee, with "full power and authority to do any and all things necessary or proper to manage, control, invest and reinvest the assets constituting the trust estate …"[25] The Bureau further claims the agreement provides Carnes, as trustee, with the authority to "execut[e] and deliver[] for and on behalf of the trust estate any .. instrument or document of whatever description."[26] Looking beyond the

---

[22] ECF No. 37 at 20.

[23] *Norman v. Young*, 422 F.2d 470, 472–73 (10th Cir. 1970).

[24] *Stoldt v. Centurion Indus., Inc.*, No. 03-2634, 2005 WL 375667, at *7 (D. Kan. Feb. 3, 2005) (internal quotation marks and citations omitted).

[25] ECF No. 33 at 13.

[26] *Id.*

10

agreement itself, the Bureau notes Carnes has already produced at least some of the responsive MCC Trust documents and regularly acts on behalf of the MCC Trust—specifically, that Carnes maintained an individual membership at a Montana country club (which is required of property owners, including the MCC Trust) and paid for that membership and for significant insurance premiums ("most likely for properties held by the MCC Trust"), all out of a joint bank account with his spouse; and filed joint tax returns under which his income (or losses) could help pay (or offset) the MCC Trust's tax liability.[27]

Carnes disputes he has sufficient control to compel the production of trust information, claiming that under the trust agreement, he and Melissa Carnes are co-trustees, and that during Melissa Carnes' lifetime, Carnes' duties as trustee "are owed exclusively to the Grantor," Melissa Carnes.[28] Carnes claims all of his powers as co-trustee are to be exercised "on behalf of the trust estate," not on his personal behalf.[29] Finally, Carnes points out that under the agreement, Melissa Carnes, as grantor, retains "the power to direct any Co-Trustee to take or omit to take any such action, and such Co-Trustee shall follow the Grantor's direction."[30]

---

[27] *Id.* at 14–15.

[28] ECF No. 37 at 18.

[29] *Id.*

[30] *Id.*

11

In its reply brief, the Bureau observes that Carnes has identified nothing in the agreement or otherwise suggesting that providing responsive information is incompatible with his role as trustee.[31] Notwithstanding that Carnes' authority as trustee can be limited by Melissa Carnes, as Grantor, the Bureau points out that any direction from the Grantor instructing Carnes to take or omit some action in the course of his duties must be in written form. Specifically, the Bureau explains that "if Melissa Carnes wanted to order Carnes not to produce certain documents on behalf of the MCC Trust, such instructions 'shall be deemed to be personal powers, not fiduciary in nature,' and therefore, '[a]ny directions by the Grantor to a Co-Trustee pursuant to this power *shall be in writing, signed by the Grantor and delivered to each Co-Trustee*.'"[32] The Bureau points out that no such writing has been produced, and that Carnes' partial production of MCC Trust documents suggests no such writing exists.

Considering both the terms of the trust agreement and the undisputed contentions surrounding Carnes' actions on behalf of the trust, the court finds the Bureau has satisfied its burden of providing Carnes, as trustee, has legal right to obtain responsive discovery regarding the MCC Trust.[33] Because the court finds the requested discovery is within

---

[31] ECF No. 38 at 8.

[32] ECF No. 38 at 10.

[33] In light of this finding, the court need not address the Bureau's alternative argument that Carnes has the legal authority to obtain documents as a trust beneficiary.

Carnes' control, the court rejects Carnes' argument that the information is discoverable only by way of a Rule 45 subpoena.[34]

The court directs Carnes to fully answer Interrogatory Nos. 3-11, 13-19, 21, and 22, and Document Request Nos. 1, 2, 6, 7, 10, 20, and 21, with respect to the MCC Trust and its assets.

**Interrogatory No. 2**

Interrogatory No. 2 asks Carnes to identify each person or entity for whom he performed services from 2014 to the present, and the amount he was paid for those services. Carnes' answer refers to his tax returns as identifying his earned income, but the Bureau claims the tax returns only list the name of Carnes' business and the income received, not the individual clients for whom he performed services. Carnes claims his answer is sufficient because the interrogatory asks about entities "for which *Carnes* performed services, not entities for which Willowbook Marketing, LLC and Carnes Consulting performed services."[35] Although Carnes claims these entities are "separate from Carnes," he doesn't dispute his 100% ownership of Willowbrook Marketing, LLC, or that he's already produced its bank account records and tax returns, or that on his tax returns he lists his business name as "Carnes Consulting" at his home address. The court agrees the

---

[34] *In re: Motor Fuel Temperature Sales Pracs. Litig.*, No. 07-1840, 2011 WL 13077584, at *1 (D. Kan. Oct. 24, 2011) ("As long as the requisite control is shown, the moving party need not first attempt to seek the documents from a third party by way of a Fed. R. Civ. P. 45 subpoena.") (citing *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516 (D. Kan. 2007)).

[35] ECF No. 37 at 21–22 (emphasis in original).

identification of these entities is insufficient and directs Carnes to provide a complete answer identifying persons or entities for whom he performed services.

**Interrogatory No. 3**

Interrogatory No. 3 asks Carnes to identify and provide information about any interests that he, his spouse, or his dependents may have in corporate entities or trusts. Although Carnes identified entities in which he has an interest, he objects to providing information about non-parties as overbroad, not relevant, and unduly burdensome. Finding the information relevant and overruling Carnes' unsupported undue-burden objection, the court directs Carnes to respond to the interrogatory to the extent such information is within his possession, custody, or control.[36]

**Interrogatory No. 6**

Interrogatory No. 6 requires Carnes to provide a current list of his, his spouse's, and his dependents' assets and liabilities, including the cost and fair market value. Carnes objects to the interrogatory as overbroad, not relevant, and unduly burdensome insofar as it would require him to "inventory and appraise literally every 'tangible' or 'intangible' asset he owns," and because it seeks information regarding non-parties.[37]

The court finds the portion of the interrogatory seeking information about Carnes' assets and liabilities precisely within the contemplated scope of post-judgment, and for the

---

[36] Of course, Carnes' assessment of whether such responsive information is within his possession, custody, or control must be consistent with the court's above finding as to information and documents regarding the MCC Trust and its assets.

[37] ECF No. 37 at 24.

reasons set forth above, concludes the information regarding the assets of Carnes' spouse and dependents relevant. The court again overrules Carnes' undue-burden objections as unsupported. The court directs Carnes' to provide a complete response to Interrogatory No. 6 to the extent such information is within his possession, custody, or control, and noting the Bureau's representation that while it's "not seeking a court order forcing Carnes to go item-by-item through an already provided list of 44 household furnishings, estimating each item's cost and fair market value if he states under oath that information is unknown[,] … there are other items for which Carnes should have information available to him to determine the discernible market value, including his 2005 automobile, his 15 watches, and his private stock."[38]

**Interrogatory Nos. 9 and 10 and Document Request No. 5**

Interrogatory No. 9 seeks information concerning Carnes', his spouse's, and his dependents' real property. Interrogatory No. 10 seeks information concerning any fixtures, furniture, machinery, equipment, trucks or automobiles owned or used by Carnes, his spouse, or his dependents, though the Bureau here seeks only to compel information regarding vehicles owned or used by Carnes, his spouse, or his dependents. Document Request No. 5 seeks documents regarding the purchase, transfer, or sale of any real estate, stocks, mutual funds, or other financial investments by Carnes, his spouse, or his dependents. Carnes objects to the foregoing discovery as overbroad, not relevant, and unduly burdensome to the extent it seeks the production of information regarding non-

---

[38] ECF No. 38 at 16.

parties.  Finding the information relevant and overruling Carnes' unsupported undue-burden objection, the court directs Carnes to respond to the interrogatory to the extent such information is within his possession, custody, or control.

**Interrogatory No. 7 and Document Request No. 21**

Interrogatory No. 7 asks Carnes to provide information relating to "insurance policies now in force and owned directly or indirectly by you, your spouse, or dependents."[39]  Document Request No. 21 seeks "[c]opies of all insurance policies and declarations, including life, auto, umbrella, and homeowner's, maintained by you, your spouse, and your dependents, regardless of whether you are or were the owner or beneficiary of the policy, in effect at any time between 2014 and the present."[40]

Carnes answered Interrogatory No. 7 stating he was insured under a term life-insurance policy with no cash surrender value, and has agreed to supplement his answer to state he's insured on an automobile policy.  The Bureau points out its request is not limited to life insurance and auto policies, but would include umbrella and homeowners insurance policies maintained by Carnes, his spouse, and his dependents, and requires that Carnes identify "each policy number, policy date, insurer's name, insured's name, policy amount, present cash surrender value, any policy loans, date policy loans were made, and date

---

[39] ECF No. 33-2 at 36.

[40] *Id.* at 59.

automatic premiums paid."[41]  Carnes has not produced any documents in response to Document Request No. 21.

In response to the Bureau's motion to compel, Carnes reiterates his objection to the production of non-party information as overbroad, not relevant, and unduly burdensome. Finding the information relevant and overruling Carnes' unsupported undue-burden objection, the court directs Carnes to provide a complete answer (i.e., including all subparts) to Interrogatory No. 7 and a complete response to Document Request No. 21 to the extent such information is within his possession, custody, or control.

IT IS HEREBY ORDERED:

The Bureau's motion to compel (ECF No. 32) is granted.  Where the court has ordered Carnes to supplement its discovery, he must do so by **March 1, 2022**.[42]  No later than **February 15, 2022**, however, Carnes shall produce, as earlier agreed, responsive brokerage account statements, bank account statements, credit card account statements, and tax returns dating from November 2015.

Dated February 1, 2022, at Kansas City, Kansas.

 s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[41] ECF No. 33 at 20.

[42] The Bureau has not opposed Carnes' request for a "reasonable period of time to provide further responses and produce documents on a rolling basis," save for certain categories of documents.  ECF No. 37 at 28.