IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CONSUMER FINANCIAL ) | |
| PROTECTION BUREAU, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 21-mc-206-DDC-TJJ |
| ) | |
| INTEGRITY ADVANCE, LLC and ) | |
| JAMES R. CARNES, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Quash and For Protective Order (ECF No. 44), filed by Defendant and Judgment-Debtor James R. Carnes, and on Nonparties Melissa C. Carnes Revocable Trust and Melissa C. Carnes' Motion to Quash and For Protective Order (ECC No. 48). Both motions seek an order quashing Rule 45 subpoenas Plaintiff Consumer Financial Protection Bureau (the Bureau) served to five financial institutions regarding fourteen different accounts. The Bureau has filed a response in opposition, and the movants have filed replies. As set forth below, the Court will deny the motions.

**I.     Relevant Background**

On January 11, 2021, the Bureau issued a final order requiring that Judgment Debtor James R. Carnes ("Carnes") pay more than $38 million in restitution and a $5 million civil

penalty. After Carnes failed to comply with that order, District Judge Lungstrum entered an order in July 2021requiring that he do so.[1] Since then, Carnes has taken no steps to satisfy the judgment, and the Bureau has sought information both from Carnes and third parties to determine the scope of Carnes's current assets and any assets the Bureau contends may have been fraudulently transferred to persons or entities connected to Carnes. One of its efforts was to serve interrogatories and document requests on Carnes. When the Bureau determined Carnes's discovery responses were inadequate, the Bureau filed a motion to compel.[2] Magistrate Judge O'Hara[3] granted the motion in its entirety and ordered Carnes to supplement his discovery responses.[4] The record suggests Carnes timely served his supplemental responses.[5]

On March 30, 2022, based on the accounts and entities Carnes identified in response to the Bureau's interrogatories and requests for production of documents, the Bureau served Rule 45 subpoenas via email on Wells Fargo Bank, N.A., Stephens, Inc., Morgan Stanley, First National Bank of Louisburg, and Country Club Bank. Each subpoena seeks financial information from January 1, 2013 to the present regarding the following accounts: James R. Carnes; James R. Carnes Revocable Trust Dated February 10, 2010; Melissa C. Carnes Revocable Trust ("MCC Trust"); Integrity Advance, LLC; Hayfield Investment Partners, LLC; Willowbrook Partners, LLC; Willowbrook Marketing, LLC; Willowbrook Management, Inc.; Blitztrade, LLC; Shadow

---

[1] ECF No. 21.

[2] ECF No. 32.

[3] The case has since been reassigned from Magistrate Judge O'Hara to the undersigned. ECF No. 46.

[4] ECF No. 39.

[5] *See* ECF Nos. 40, 41.

Creek Partners, LLC; Starboard Tack Marketing, LLC; 26 to 2, LLC; OHM Invest, LLC; and Banana Kick, LLC. The same day, the Bureau also sent copies of the five subpoenas to Melissa C. Carnes by USPS Priority Mail, and she received the package on April 4, 2022.

Although counsel for Melissa C. Carnes and the Melissa C. Carnes Revocable Trust ("MCC Movants") contacted the Bureau's counsel on April 12, 2022, he made no mention of challenging the subpoenas. Two days later, counsel for Carnes sent an email to the Bureau's counsel asking to meet and confer regarding Carnes's objections. On April 15, 2022, they met and conferred, and Carnes filed this motion by day's end. The MCC Movants filed their own motion on April 18, 2022.

## II.     Summary of the Parties' Arguments

Carnes seeks an order quashing the subpoenas as invalid because the Bureau failed to provide him notice as required by Fed. R. Civ. P. 45(a)(4). Carnes also seeks a protective order that (1) limits the scope to the financial condition of the debtor, rather than encompassing information about the financial assets of non-parties; and (2) restricts the temporal scope of the subpoenas so the relevant period commences on January 1, 2014, and not one year earlier.

The MCC Movants join in Carnes's motion and seek a protective order shielding them from annoyance, embarrassment, oppression, and expense.

The Bureau contends Carnes and the MCC Movants (collectively "all Movants") lack standing to move to quash the subpoenas, as neither is a subpoena recipient and neither expressly asserted a privilege or privacy interest that would confer standing. Even if they have a privacy interest in their personal financial affairs, the Bureau asserts they lack standing with respect to the corporate information sought by the subpoenas. The Bureau further argues neither has shown good cause for entry of a protective order, as Carnes's relevance objections do not entitle him to

3

a protective order and the MCC Movants have made only a conclusory statement that the subpoenas cause them annoyance, embarrassment, oppression, and expense. Moreover, because they are not parties nor is discovery sought from them, the Bureau contends the MCC Movants are not entitled to a protective order.

### III.   Legal Standard

Generally, a motion to quash or modify a subpoena "may be made only by the party to whom the subpoena is directed."[6] An exception to the general rule can apply "when the party challenging the subpoena has a personal right or privilege in respect to the subject matter requested in the subpoena."[7] A party moving to quash a third-party subpoena must expressly make and support a claim of privilege or privacy that would give them standing.[8]

Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[9] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of "a trade secret or other confidential research, development, or commercial information" or "an unretained expert's opinion."[10]

---

[6] *Orchestrate HR, Inc. v. Blue Cross and Blue Shield of Kansas, Inc.*, No. 19-cv-4007, 2021 WL 1635853, *2 (D. Kan. Apr. 27, 2021).

[7] *Id.* (internal quotation marks omitted). *See also McDonald v. Kellogg Co.*, No. 08-2473, 2009 WL 10664465, *1 (D. Kan. Nov. 5, 2009).

[8] *Wells Fargo Bank, N.A. v. Mesh Suture Inc.*, No. 19-cv-03218-PAB-GPG, 2020 WL 5517034, at *2 (D. Colo. May 12, 2020).

[9] Fed. R. Civ. P. 45(d)(3)(A).

[10] Fed. R. Civ. P. 45(d)(3)(B).

"The scope of discovery under a subpoena is the same as party discovery permitted by Fed. R. Civ. P. 26."[11] In other words, the relevancy standards set forth in Rule 26 define the permissible scope of a Rule 45 subpoena. Relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[12] Information still "need not be admissible in evidence to be discoverable."[13] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[14] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[15] Relevancy determinations are generally made on a case-by-case basis.[16]

Federal Rule of Civil Procedure 26(c) provides, in pertinent part, that for good cause the court may issue an order to protect a party from "annoyance, embarrassment, oppression, or

---

[11] *In re Syngenta AG MIR 162 Corn Litigation*, MDL No. 2591, No. 14-md-2591-JWL, 2017 WL 1106257, at *16 (D. Kan. Mar. 24, 2017) (citing *Schneider v. CitiMortgage, Inc.*, No. 13-4094, 2014 WL 4749181, at *2 (D. Kan. Sept. 24, 2014)).

[12] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[13] Fed. R. Civ. P. 26(b)(1).

[14] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[15] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[16] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."[17] The party seeking the protective order has the burden of demonstrating good cause for it.[18] To establish good cause, the moving party must offer "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[19] Even upon a showing of good cause, however, the Court also considers other factors that were or could have been presented by the party seeking discovery to determine whether the totality of the circumstances justifies the entry of a protective order.[20]

The court has broad discretion to decide when a protective order is appropriate and what degree of protection is warranted.[21] The Supreme Court has recognized "[t]he trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[22] Notwithstanding this broad grant of discretion, a court may issue a protective order *only* if the moving party demonstrates that the basis for the protective order falls within one of the specific categories enumerated in the Rule, *i.e.* that the requested order is necessary to protect the party from "annoyance, embarrassment,

---

[17] Fed. R. Civ. P. 26(c)(1)(A).

[18] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003).

[19] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[20] *See Citimortgage, Inc. v. Sanders*, No. 11-CV-2540-EFM-GLR, 2012 WL 6024641, at *2 (D. Kan. Dec. 4, 2012).

[21] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

[22] *Seattle Times*, 467 U.S. at 36.

oppression, or undue burden or expense."[23]

**IV.     Analysis**

The Court first considers whether those challenging the subpoenas have met the conferral requirement of this district's Local Rule 37.2. Carnes describes the written and telephonic communication between his counsel and counsel for the Bureau and asserts he has satisfied the requirement. The Bureau does not disagree with Carnes, but notes the MCC Movants' failure to certify they conferred in good faith. Indeed, the Bureau contends that because the MCC Movants made no effort to confer or even indicate they intended to challenge the subpoenas, the Court should not entertain their motion. In their reply, the MCC Movants state they were aware of the unproductive nature of the Bureau's meet-and-confer with Carnes and thought it unnecessary to conduct their own because they were joining in Carnes's motion. After the Bureau raised this issue in its response, however, the MCC Movants conducted their own meet-and-confer with the Bureau and offered to withdraw and refile their motion to include a Rule 37.2 certification. According to the MCC Movants, the Bureau declined and indicated a preference to move forward.

The Court finds Carnes has satisfied Rule 37.2. The MCC Movants, who not only joined Carnes's motion but separately moved for a protective order, are incorrect in believing they were not subject to the rule. However, in light of the parties' positions and in recognition of Federal Rule of Civil Procedure 1, the Court will address the merits, first considering whether they have standing to bring their motions.

---

[23] *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1652056, at *3 (D. Kan. June 6, 2007) (quoting Fed. R. Civ. P. 26(c)).

A.     Standing

The Bureau addresses all Movants' standing to move to quash the Rule 45 subpoenas and the MCC Movants' ability to seek a protective order under Rule 26(c).

1.     Rule 45 Subpoenas

The Bureau argues all Movants lack standing to challenge the subpoenas because the subpoenas are not directed to them, nor have they expressly asserted a privilege or privacy interest that would confer standing.[24] Although no movant identified a privilege or privacy interest in his or their motion, the Bureau acknowledges this district has permitted a party to challenge third-party subpoenas for the party's own financial records.[25] Both reply briefs assert a privacy interest in all Movants' own financial records. Consistent with other decisions in this district, the Court finds all Movants have standing to challenge the subpoenas to the extent the subpoenas seek the respective Movant's own financial records.

The Bureau does not make a similar concession regarding all Movants' standing to challenge the subpoenas insofar as they seek information about the financial records of accounts held in the names of the remaining eleven entities, ten of which are LLCs and one of which is a traditional corporation.[26] Instead, the Bureau affirmatively argues that an individual's standing to

---

[24] "Generally, a motion to quash a subpoena must be made by the party to whom the subpoena is directed unless the party challenging the subpoena has a 'personal right or privilege with respect to the subject matter of the documents requested in the subpoena.'" *Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, No. 14-1011-RDR, 2014 WL 6472885, at *2 (D. Kan. Nov. 18, 2014).

[25] *E.g., Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003).

[26] Carnes seems to think the Bureau views the account of Defendant Integrity Advance, LLC as being in the same category as the accounts in his own name and in the name of his revocable trust, both of which clearly comprise Carnes's own financial information. *See* ECF No. 53 at 2 & n.1 ("The CFPB next argues that Carnes lacks standing to challenge the subpoenas' application to the Target Businesses" and defining "the Target Businesses" as "the 10 non-party LLCs and

protect the privacy of their "personal financial affairs" does not extend to cover an individual's financial interest in the affairs of a business. The Bureau relies on a ruling by Magistrate Judge O'Hara on motions to quash subpoenas served by the plaintiff on two non-party banks. *Patel v. Snapp*, No. 10-2403-JTM, 2013 WL 5876435 (D. Kan. Oct. 31, 2013). The subpoenas served on The People's Bank sought the financial records of the movants, Wilson Parmar, Grace Parmar, and Peace, Inc. Judge O'Hara found the movants had a privacy interest in their own financial information and thus had standing to challenge this subpoena.[27] The second subpoena was issued to Bank of America for financial records of David, Inc. The corporation did not move to quash the subpoena, and Judge O'Hara concluded the movants did not have standing to do so.

> Wilson Parmar asserts that he is a shareholder in David, Inc. Absent a claim of privilege or a personal right in the subpoenaed matter, however, movants do not have standing to challenge the subpoenaed matter. Wilson Parmar's assertion that he is a shareholder of David, Inc., without more, is not enough to find any of the movants have standing.
>
> [T]he interest in the financial information being sought belongs to David, Inc., not to the movants. Therefore, Wilson Parmar's conclusory assertion that he has standing as a shareholder of David, Inc. is insufficient. The court finds that movants do not have standing to quash the Bank of America subpoena.[28]

Carnes seeks to distinguish *Patel* on the basis that he is not a "mere individual

---

corporations for which the CFPB's subpoenas request financial information."). Integrity Advance, LLC is not one of the Target Businesses he lists. But the Bureau makes no distinction between Integrity Advance, LLC and the other ten non-party LLCs and corporations. Carnes brings his motion only in his name, and offers no argument in favor of treating the records of Integrity Advance, LLC as his own financial records. Integrity Advance, LLC has not moved to quash the subpoenas or obtain a protective order. The Court considers Carnes's own financial records as those in the accounts maintained in his name and in the name of the James R. Carnes Revocable Trust, Dated February 10, 2010.

[27] 2013 WL 5876435, at *2.

[28] *Id.*

shareholder" of the Target Businesses but is instead the majority owner. But as in *Patel*, Carnes offers nothing more than a conclusory assertion of his status vis-à-vis the Target Businesses, and he has not demonstrated he is entitled to standing. The MCC Movants do not acknowledge the difference between the account that contains their own financial information (the Melissa C. Carnes Revocable Trust, Dated February 10, 2010) and the other thirteen accounts, but instead assert they have a direct privacy right at stake without explaining what it is.

Carnes separately argues that because "district courts in the 10th Circuit hold that an owner of an LLC has standing to assert claims on behalf of the LLC, [Carnes] has standing to move to quash invalid subpoenas issued to the Target Businesses."[29] The argument is not well-founded. Carnes cites a single case in support of his assertion, a District of Utah case ruling cross-motions for summary judgment, along with other motions pending in consolidated cases.[30] The evidence showed one party, a corporation, was the sole owner of two other parties, both LLCs. In dicta, the court makes the unremarkable statement that the corporate owner of the LLCs had the authority to assert claims on behalf of the LLCs. The case has nothing to do with Rule 45 subpoenas or other discovery issues, and it does not support Carnes's assertion that he has standing to challenge the Bureau's subpoenas seeking records from accounts held in the name of LLCs or corporations.

The Court finds Carnes has standing to challenge each subpoena that seeks documents from any account maintained in the names of (1) James R. Carnes and (2) James R. Carnes

---

[29] ECF No. 53 at 2.

[30] *Basic Research, L.L.C. v. Rainbow Media Holdings, Inc.*, 849 F. Supp. 2d 1250 (D. Utah 2011).

Revocable Trust, Dated February 10, 2010. Similarly, the MCC Movants have standing to challenge each subpoena that seeks documents from any account maintained in the name of the Melissa C. Carnes Revocable Trust, Dated February 10, 2010.[31] The Court further finds that no Movant has standing to challenge the subpoenas insofar as they seek records from accounts maintained in the names of Integrity Advance, LLC; Hayfield Investment Partners, LLC; Willowbrook Partners, LLC; Willowbrook Marketing, LLC; Willowbrook Management, Inc.; Blitztrade, LLC; Shadow Creek Partners, LLC; Starboard Tack Marketing, LLC; 26 to 2, LLC; OHM Invest, LLC; or Banana Kick, LLC.

### 2. Rule 26(c) Protective Order

The Bureau asserts the MCC Movants are not entitled to a protective order because Rule 26(c) specifically limits availability to a party or a person from whom discovery is sought.[32] The MCC Movants do not address this argument in either their motion or their reply. "Unlike Rule 45, Federal Rule of Civil Procedure 26(c) expressly limits who may move for a protective order to the parties or the person from whom discovery is sought."[33] Because the MCC Movants are not a party to this action, nor are the subpoenas directed to them, the Court concludes they do not have standing to seek a protective order.

---

[31] The Bureau does not dispute that Melissa Carnes's right to challenge subpoenas related to the Revocable Trust as its grantor. As she describes it, "[h]er own personal social security number was used to set up the bank accounts that are subject to the five subpoenas; her personal social security number is used as the tax identification number for the MCC Trust; and she files personal taxes each year to include information related to the MCC Trust." ECF No. 55 n.1.

[32] "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . ." Fed. R. Civ. P. 26(c)(1).

[33] *Furr,* 2014 WL 6472885, at *1 (quoting *SEC v. Dowdell*, 144 Fed. App'x 716, 722-23 (10th Cir. 2005)).

B.  **Failure to Provide Notice of Subpoena to Carnes**

Carnes argues the subpoenas are invalid and should be quashed because the Bureau did not provide him notice before serving the subpoenas on the financial institutions. He points to the requirement of Rule 45 that before a party serves a subpoena that commands production of documents, the party must serve notice and a copy of the subpoena on each party.[34] The Bureau acknowledges it did not comply with the notice provision, but asserts it was not required to do so because the provision applies only to pre-trial subpoenas.

Federal Rule of Civil Procedure 69 allows a judgment creditor to "obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."[35] Accordingly, subpoenas issued pursuant to Rule 45 are an available means of conducting discovery in aid of execution on a judgment, as in this case. The pertinent language of Rule 45 states that "[i]f the subpoena commands the production of documents, . . . before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."[36]

The Bureau argues it was not required to provide notice to the judgment creditors in advance of serving the subpoenas on the financial institutions because the subpoenas were not issued before trial. Carnes disagrees, relying on a ruling from the Southern District of New York in which the court quashed subpoenas issued in aid of enforcement of an arbitration award for

---

[34] Fed. R. Civ. P. 45(a)(4). Although the MCC Movants join in Carnes's motion (ECF No. 48 at 2), this argument is not available to them because they are not parties to the action.

[35] Fed. R. Civ. P. 69(a)(2).

[36] Fed. R. Civ. P. 45(a)(4).

lack of compliance with the Rule 45 notice requirement.[37] The court provided no analysis of the interplay between Rules 69 and 45, but merely held that "[h]aving elected to issue its . . . subpoenas pursuant to Rule 45 . . . , [petitioner] was obligated to comply with Rule 45's notice requirement."[38]

Other courts have looked more closely at the issue. The Court finds the analysis in *Signature Financial, LLC v. McClung,* No. 2:19-MC-00018, 2019 WL 2130157 (W.D. Ark. May 15, 2019) informative and persuasive. In *Signature Financial*, the plaintiff was attempting to execute on defendants' assets to satisfy a judgment against them. Plaintiff served a document subpoena on a bank as part of its efforts, but did not first serve a copy on defendants. Defendants moved to quash the subpoena, in part because the subpoena had not been served on them. The court ruled as follows:

> The McClungs' argument for quashing the subpoena for lack of preservice notice is rejected. The preservice notice requirement of Rule 45(a)(4) applies to a "subpoena that commands the production of documents, electronically stored information, or tangible things or the inspection of premises *before trial*." Fed. R. Civ. P. 45(a)(4) (emphasis added). The Rule elsewhere describes subpoenas for the production of documents, electronically stored information, or tangible things or the inspection of premises without including the "before trial" modifier. Fed. R. Civ. P. 45(a)(1)(A)(iii), (a)(1)(C), (a)(1)(D), (c)(2), and (d)(2)(A). Because of its inclusion in Rule 45(a)(4), and not in those other subsections, the phrase "before trial" must have some meaning, and the McClungs identify no reason to give the phrase any meaning but its ordinary one. The preservice notice requirement applies when the subpoena commands compliance before trial. The time for trial in the California lawsuit has passed, this is a postjudgment subpoena, compliance is not commanded "before trial," and so the preservice notice requirement of Rule 45(a)(4) does not apply to this subpoena.[39]

---

[37] *Cessna Fin. Corp. v. Al Ghaith Holding Co. PJSC*, No. 15-CV-9857(PGG)(KNF), 2021 WL 949714, at *5-6 (S.D.N.Y. Mar. 12, 2021).

[38] *Id.* at *6.

[39] *Signature Fin.,* 2019 WL 2130157, at *2. *See also PNC Equip. Fin., LLC v. Mariani*, No. 19-76 (MAS), 2021 WL 4078864, at *2 (D.N.J. Sept. 8, 2021) (defendant not entitled to preservice

The Court agrees with this analysis. But even if the Bureau were required to provide preservice notice to Carnes, the Court would not quash the subpoena on that basis because Carnes has not demonstrated prejudice. He acknowledges his wife, Melissa Carnes, received notice of the subpoenas from the Bureau.[40] The Bureau represents it provided notice to Ms. Carnes via U.S. Postal Service Priority Mail on the same day it served the subpoenas by email.[41] Carnes asserts that had he not learned of the subpoenas through his wife, he would have been deprived of the ability to timely object. But he did learn of the subpoenas, and he did timely object.[42]

The Court concludes the Bureau was not required to provide preservice notice to Carnes, and will not quash the subpoenas on that basis.

C. **Scope of the Subpoenas**

Carnes argues the subpoenas should be quashed because they seek information that is irrelevant to the type of discovery available to the Bureau under the Federal Debt Collection Procedures Act.[43] Under the Act, "the United States may have discovery regarding the financial

---

notice of non-party subpoena issued in aid of judgment); *United States v. Chomos*, No. 4:08-CR-0092, 2015 WL 5233333, at *1 (N.D. Ohio Sept. 8, 2015) (subpoena served in post-judgment proceeding to collect restitution not subject to Rule 45(a)(4) notice).

[40] Notice to Ms. Carnes was required by the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401-3422.

[41] ECF No. 52-2 at ¶4.

[42] Carnes also asks the Court to "order the CFPB to comply with Rule 45's notice requirement when issuing future subpoenas." ECF No. 45 at 6. The Court will not reach beyond the confines of this miscellaneous action and declines Carnes's request.

[43] The Bureau does not disagree the statute provides "the exclusive civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1).

condition of the debtor in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt."[44] According to Carnes, the subpoenas seek information that goes beyond "the financial condition of the debtor." In addition, Carnes contends the temporal scope of the subpoenas exceeds what has previously been allowed in this case and identified by the Bureau as the relevant time period.

Notably, neither Carnes nor the MCC Movants argue the subpoenas they have standing to challenge must be quashed for one of the reasons set forth in Rule 45(d)(3)(A), or should be quashed on the basis of the grounds listed in Rule 45(d)(3)(B). But while Rule 45 "does not include relevance as an enumerated reason for quashing a subpoena[,] [i]t is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)."[45] The Court considers the relevance objection to the subpoenas for which all Movants have standing.

### 1. Discovery related to the financial condition of the debtor

Carnes contends he has produced the only information relevant to the Bureau's judgment against him, *i.e.*, account statements and other records identifying transfers he made to third parties since January 1, 2014. He argues any information the Bureau would receive from the subpoenas would be duplicative. The Bureau disagrees, relying on the broad scope of allowable post-discovery judgment reflected in caselaw. "[T]he scope of postjudgment discovery 'is very broad, as it must be if the procedure is to be of any value,' and may encompass information

---

[44] 28 U.S.C. § 3015(a).

[45] *Transcor, Inc.*, 212 F.R.D. 588, 591.

about nonparties."[46] When faced with this argument, the court in *Signature Financial* noted the most important issue in the case at the execution stage was "allowing [plaintiff] to collect its judgment. The amount of the judgment is high enough to justify a somewhat intrusive search into the financial information not only of [defendant] but of nonparties who might be in possession of [defendant]'s assets."[47] The same holds true in this case.

As noted in the briefs, after the MCC Movants received notice of these subpoenas, they filed a motion in a separate action seeking an order preventing the government from obtaining access to financial records under the customer challenge provision of the Right to Financial Privacy Act of 1978 ("the MCC Movants' action"). In his order denying the motion, District Judge Crabtree wrote as follows:

> [T]he CFPB has come forward with specific factual assertions showing that the MCC Trust's connection to the investigation into James Carnes's financial condition (to aid in collecting the Judgment) is not just Melissa Carnes's familial ties with the target—James Carnes. Instead, the CFPB cites transfers of funds between the MCC Trust and James Carnes, as well as the MCC Trust's transfer of funds to LLCs and a trust controlled by James Carnes. The CFPB contends that these facts support a reasonable belief that the records sought by the five subpoenas are relevant to James Carnes's financial condition and deciding whether he concealed or transferred assets to avoid paying the Judgment. The court agrees with the CFPB. It has satisfied the relevance requirement here.[48]

---

[46] *Signature Fin.*, 2019 WL 2130157, at *2 (quoting 12 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure Civil* § 3014 (3d ed. 2019) (citations omitted).

[47] *Id.*

[48] *Melissa C. Carnes Revocable Tr. Dated February 10, 2010 v. Consumer Fin. Protec. Bureau*, No. 22-MC-00203-DDC-TJJ, 2022 WL 1442845, at *7 (D. Kan. May 6, 2022).

The undersigned agrees with Judge Crabtree's conclusion. The Bureau has demonstrated the relevance of the subpoenas and the Court will not quash them for lack of relevance.

### 2. Temporal Scope

Carnes also objects to the Bureau's effort to obtain information beginning January 1, 2013 as exceeding the relevant time frame for discovery. He notes Magistrate Judge O'Hara ordered Carnes to produce information dating back to January 1, 2014. In its motion to compel discovery, the Bureau had argued in favor of that date as the time when Carnes became aware of the Bureau's investigation and may have concealed or transferred assets.[49] Carnes asserts the subpoenas should be quashed because their temporal scope exceeds Judge O'Hara's order.[50] The Bureau provides specific information it has obtained in discovery from Carnes since Judge O'Hara entered his order to demonstrate that information for calendar year 2013 is relevant.

Judge Crabtree addressed this same argument in the MCC Movants' action. He wrote as follows:

> "Th[is] argument by movants ignore[s] the standard for relevance which is "'quite broad.'" *Lynch* [*v. U.S. Dep't of Hous. & Urb. Dev.*, No. 09-mc-229-JWL,] 2009 WL 4827049, at *3 [(D. Kan. Dec. 11, 2009)] (quoting *Whitburn* [*v. U.S. Dep't of Treasury*, No. 93-MC-139-PFK, 1993 WL 544285,] at *2 [(D. Kan. Dec. 9, 1993)]. To satisfy the relevance inquiry, the law enforcement agency need only have a "'good reason to investigate.'" *Id.* (quoting *Matter of SEC Priv. Investigation* [*/Application of John Doe re Certain Subpoenas*], No. M8-85, 1990 WL 119321,

---

[49] Order dated February 1, 2022 (ECF No. 39) at 4.

[50] Carnes also refers to two statutes of limitation in the Federal Debt Collection Procedures Act—the statute controlling civil actions for the United States to recover on a judgment—and states they "guide the scope of post-judgment discovery." ECF No. 45 at 8. Carnes offers no support for this proposition and the Court does not accept that the Bureau's statute of limitations to bring the original action controls the permissible temporal scope of the subpoenas at issue.

17

at *2 (S.D.N.Y. Aug. 10, 1990). The CFPB has provided the requisite good reason here.[51]

As in the MCC Movants' action, the Bureau has sufficiently provided good reason in the form of discovery Carnes recently produced which puts the period January 2013 to December 31, 2013 at issue. The Court will not quash the subpoenas on the basis that they exceed the relevant temporal scope.

Having determined that all Movants are not entitled to an order quashing the subpoenas at issue, the Court turns to Carnes's alternative request for a protective order.[52]

### D.     Protective Order

In his motion, the only mention Carnes makes of a protective order is to urge the Court to restrict the scope of the subpoenas "because they seek to discover irrelevant information about the financial assets of non-parties."[53] The Bureau contends Carnes has not shown good cause for a protective order, which requires that "the moving party must make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[54] Moreover, the Bureau contends, relevance is not a basis for entry of a protective order. In his reply, Carnes disagrees, but the cases he cites do not involve motions for protective order.

In *McDonald v. Kellogg Co.*, 08-2473-JWL, 2009 WL 10664465, at *2 (D. Kan. Nov. 5,

---

[51] *Melissa C. Carnes Revocable Tr. Dated February 10, 2010 v. Consumer Fin. Protec. Bureau*, 2022 WL 1442845, at *7.

[52] The Court earlier noted the remedy of a protective order is not available to the MCC Movants because they are not parties to this action.

[53] ECF No. 44 at 1.

[54] *hibu Inc. v. Peck*, No. 16-1055-JTM-TJJ, 2017 WL 2831511, at *2 (D. Kan. June 30, 2017) (citation omitted).

2009), Judge O'Hara succinctly stated the law in this district:

> Rule 26(c) limits both who can seek a protective order and for what reasons, stating that "[a] party or any person *from whom discovery is sought* may move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[55] But the rule does not permit the court to issue such an order " 'to protect a party from having to provide discovery on topics merely because those topics are overly broad or irrelevant, or because the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence.' "[56]

The Court will not entertain Carnes's motion for protective order on the basis of relevance. Even if the Court did so, Carnes would not prevail because the Court has already determined the subpoenas seek relevant information.

In sum, the Court finds no basis on which to quash the Bureau's subpoenas, nor have Carnes or the MCC Movants demonstrated they are entitled to a protective order.

---

[55] *See also Epling v. UCB Films, Inc.,* No. 98-4226, 2000 WL 1466216, at *2 (D. Kan. Aug. 7, 2000) (finding Rule 26(c) inapplicable where defendant sought a protective order regarding discovery sought from a third party but could not demonstrate that defendant would suffer annoyance, embarrassment, oppression, or burden); *In re REMEC, Inc. Sec. Litig.*, No. 04cv1948 JLS, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) ("A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." (emphasis added)); *In re Application of FB Foods, Inc.*, No M8-85, 2005 WL 2875366, at *1 (S.D.N.Y. Nov. 2, 2005) ("Absent a showing of privilege or privacy, a party ordinarily lacks standing to challenge a non-party subpoena with a motion for a protective order or to quash."). *But see Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) ("A party does have standing to move for a protective order if a third-party subpoena seeks irrelevant information." (citing *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005))). (footnote in original)

[56] *Belisle v. BNSF Ry. Co.,* No. 08-2087, 2009 WL 1559759, at *1 (D. Kan. June 1, 2009) (quoting *P.S. v. Farm, Inc.*, No. 07-2210, 2009 WL 483236, at *3 (D. Kan. Feb. 24, 2009*)); see also Aikens v. Deluxe Financial Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) ("Rule 26(c) does not provide for any type of order to protect a party from having to divulge privileged information or materials that are not calculated to lead to the discovery of admissible evidence."). (footnote in original)

**IT IS THEREFORE ORDERED** that Defendant's Motion to Quash and For Protective Order (ECF No. 44), filed by Defendant and Judgment-Debtor James R. Carnes, and Nonparties Melissa C. Carnes Revocable Trust and Melissa C. Carnes' Motion to Quash and For Protective Order (ECC No. 48) are **DENIED**.

**IT IS SO ORDERED.**

Dated this 15th day of July, 2022 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge