**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CONSUMER FINANCIAL )
PROTECTION BUREAU, )
 )
   Plaintiff, )
 )
v. )  Case No. 21-mc-206-DDC-TJJ
 )
INTEGRITY ADVANCE, LLC and )
JAMES R. CARNES, )
 )
   Defendants. )

<u>**MEMORANDUM AND ORDER**</u>

   Melissa Carnes, individually and as trustee of the Melissa C. Carnes Revocable Trust ("the MCC Trust"), has filed two motions to quash (ECF Nos. 128 and 159), pursuant to 28 U.S.C. § 3205(c)(10)(A), requesting a court order quashing writs of garnishment freezing MCC Trust accounts held by garnishees Morgan Stanley and Country Club Bank.[1] She contends the accounts are wholly owned by the MCC Trust and are not subject to garnishment for the obligations of her spouse, James Carnes. She requests an order clarifying that three Morgan Stanley brokerage accounts and one Country Club Bank account are not subject to garnishment and further directing the garnishees to unfreeze the accounts.

---

[1] The first motion sought to quash the writs of garnishment of a single Morgan Stanley brokerage account, three Country Club Bank accounts, and three American Century accounts. The writs of garnishment of two of the Country Club Bank accounts and all three American Century accounts have since been released. *See* Orders Releasing Garnishment (ECF Nos. 142 and 143). The second motion seeks to quash the writs of garnishment of two additional Morgan Stanley accounts. Thus, the only garnishments remaining at issue are Morgan Stanley Accounts 3581, 3717, and 9204, and Country Club Bank Account 5420.

Plaintiff Consumer Financial Protection Bureau ("the Bureau") opposes both motions, arguing the second motion to quash for the two additional Morgan Stanly accounts was filed more than 20 days after service of either the notice of garnishment or garnishee Morgan Stanley's amended answer and is therefore untimely. The Bureau also requests that all three Morgan Stanley accounts and the Country Club Bank account remain frozen, arguing James Carnes has a substantial nonexempt interest in these accounts nominally held by the MCC Trust because the funds in those accounts can be traced to a series of allegedly fraudulent transfers made by James Carnes from the James R. Carnes Revocable Trust ("JRC Trust") after he learned of the Bureau's investigation. The Bureau alternatively requests the motions to quash be held in abeyance until after the parties have an opportunity to conduct discovery concerning the source, nature, and purpose of the transfers for all accounts at issue.

As explained below, the Court denies the motions to quash, without prejudice, at this time.[2]

## I.      BACKGROUND

On January 11, 2021, the Director of the Bureau issued a Final Order in the administrative proceeding regarding James Carnes and his company, Integrity Advance, LLC ("Integrity Advance"), requiring them to pay more than $38 million in restitution for losses caused by an illegal payday lending scheme.[3] The Final Order also includes a $7.5 million civil penalty against Integrity Advance and a $5 million civil penalty against James Carnes.[4] When James Carnes failed

---

[2] Prior to entry of this M&O and upon the Court's inquiry, Melissa Carnes agreed to waive her requests for hearing on these motions to quash at this time.

[3] Final Order, *Integrity Advance, LLC and James R. Carnes*, CFPB No. 2015-CFPB-0029 (Jan. 11, 2021), ECF No. 2-1, at 67-68.

[4] Id.

to comply, the Bureau filed this miscellaneous action seeking an order and judgment enforcing the Final Order. On July 30, 2021, the Court granted the Bureau's petition[5] and entered a Judgment in favor of the Bureau incorporating the Final Order.[6] Since then, James Carnes has not made any payments to satisfy the Judgment.

On April 5, 2023, the Bureau filed a new civil action asserting a fraudulent transfer claim under the Federal Debt Collection Procedures Act[7] against "James R. Carnes, individually and in his capacity as co-trustee of the JRC Trust, as transferor, and Melissa C. Carnes, individually and in her capacity as co-trustee of the MCC Trust, as transferee."[8] That case is captioned *Consumer Financial Protection Bureau v. Carnes,* Case No. 23-cv-2151-DDC-TJJ, and will be referenced herein as the "Fraudulent Transfer Action." The Bureau alleges in the Fraudulent Transfer Action that James Carnes made fraudulent transfers of approximately $12.3 million in cash and investments to his wife's trust, the MCC Trust, "with actual intent to hinder, delay, or defraud a creditor," in violation of 28 U.S.C. § 3304(b)(1)(A).[9]

On April 26, 2023, the Bureau filed applications in this miscellaneous case requesting the Clerk issue writs of garnishment upon the Judgment entered against James Carnes to garnishees

---

[5] Mem. & Order, ECF No. 21.

[6] Judgment in a Civil Case, ECF No. 22.

[7] 28 U.S.C. §§ 3001–3308.

[8] Fraudulent Transfer Action Compl., Case No. 23-cv-2151-DDC-TJJ, ECF No. 1, at 12-14.

[9] *Consumer Fin. Prot. Bureau v. Carnes*, No. 23-2151-DDC-TJJ, 2023 WL 6143307, at *2 (D. Kan. Sept. 20, 2023).

Country Club Bank, Morgan Stanley, and American Century Brokerage.[10] That same day, the Clerk issued Writs of Garnishment ordering the garnishees to withhold and retain, pending further order, any property, funds, accounts, monies, stock, or earnings to which James Carnes has a "substantial non-exempt interest."[11] The Writ of Garnishment issued to Morgan Stanley ordered it to withhold and retain, property, funds, and accounts "including but not limited to all funds in accounts ending in 067."[12] The Writ of Garnishment issued to Country Club Bank ordered it to retain property, "including but not limited to" all funds in ten accounts identified by the last four digits.[13] The Bureau then filed Notices of Garnishment to Interested Parties and served them upon Melissa Carnes.[14] The Notices stated:

> YOU ARE FURTHER NOTIFIED that, unless within twenty (20) days from receipt of this Notice, or by May 22, 2023, you file a motion to quash the Writ of Garnishment pursuant to 28 U.S.C. § 3202(d), an order may be entered attaching the funds or property and the funds or property will be applied against the judgment owed to the Consumer Financial Protection Bureau (Bureau) by Defendant James R. Carnes.[15]

On May 8, 2023, Morgan Stanley filed its Answer (ECF No. 92) identifying three cash and two illiquid securities accounts in which James Carnes had an interest but listing no account

---

[10] ECF Nos. 59, 62, and 63. All American Century accounts garnished by the Bureau were subsequently released and are not at issue here. Therefore, the Court excludes garnishee American Century from the background discussion that follows.

[11] ECF Nos. 68, 71, and 72.

[12] ECF No. 71.

[13] ECF No. 68.

[14] ECF Nos. 77, 78, and 79.

[15] Notice of Garnishment & Instructions to Interested Parties - Garnishee Mogan Stanley (ECF No. 77).

numbers. On May 19, 2023, Morgan Stanley filed an Amended Answer of Garnishee (ECF No. 126) stating it has custody, control, or possession of property in which the Judgment Debtor maintains an interest and listing six brokerage accounts with their approximate values. For three of the listed accounts (with numbers ending 3717, 9204, and 3581), all of which are at issue here, Morgan Stanley described James Carnes' interest in the accounts as "Spouse/Trustee."[16]

The Answer of Country Club Bank was filed May 18, 2023, and listed Account 5420 with James Carnes listed as "Co-Trustee."[17]

On May 22, 2023, Melissa Carnes filed a Motion to Quash (ECF No. 128) ("First Motion to Quash") the garnishments to the extent they seek to garnish accounts not owned by James Carnes, or accounts that are otherwise exempt from garnishment, and included a request for hearing. The Bureau filed its response (ECF No. 136) on June 12, 2023, stating it did not oppose the portion of the motion seeking to quash the writs of garnishment on two of the three Country Club Bank accounts and all three American Century Services LLC's accounts and would be filing motions to release the garnishment of those accounts.[18] Melissa Carnes filed her amended reply (ECF No. 151) in support of her First Motion to Quash the garnishment of Morgan Stanley Account 3581 and Country Club Bank Account 5420 on June 30, 2023.

On August 14, 2023, Melissa Carnes filed a second Motion to Quash Additional Morgan Stanley Accounts (ECF No. 159) ("Second Motion to Quash"), requesting an order quashing the

---

[16] Am. Answer of the Garnishee Morgan Stanley, ECF No. 126, at 3. All subsequent references to account numbers will reference only the last four digits.

[17] Answer of Garnishee Country Club Bank, ECF No. 119, at 3.

[18] Pl.'s Resp., ECF No. 136, at 1 n.1. The Bureau filed motions to release the garnishments of these accounts on June 13, 2023, and the Court entered orders releasing the writs of garnishments on June 14, 2023. ECF Nos. 142 and 143.

writ of garnishment issued to Morgan Stanley (ECF No. 71) as it relates to two additional accounts, Morgan Stanley Accounts 3717 and 9204, that were listed in the garnishee's amended answer but inadvertently omitted in her First Motion to Quash. The Bureau filed a response arguing that the Second Motion to Quash should be denied because it is untimely and because James Carnes retains an equitable interest in the Morgan Stanley Accounts 3717 and 9204 by virtue of his fraudulent transfers of funds into those accounts. The arguments will be addressed below.

## II.      PARTIAL MOOTNESS OF FIRST MOTION TO QUASH

As an initial matter, the Court notes that portions of the First Motion to Quash are now moot in light of the Court's orders releasing garnishment of the referenced accounts at Country Club Bank and American Century.[19] The only part of the motion still in contention is the request to quash the garnishment as to Country Club Bank Account 5420 and Morgan Stanley Account 3581. The parties' arguments with respect to these accounts will be addressed in Section IV below.

## III.     TIMELINESS OF THE SECOND MOTION TO QUASH

Before addressing the remainder of Melissa Carnes' First Motion to Quash, the Court first resolves the Bureau's argument that Melissa Carnes' Second Motion to Quash should be summarily denied as untimely. The Bureau argues the motion is untimely because it was filed more than 20 days after service of either the Notice or garnishee Morgan Stanley's amended answer, which identified the two additional accounts at issue in the motion.  The Bureau further points out that Melissa Carnes did not seek leave to file her second motion out of time.

Melissa Carnes argues her motion is not untimely because the 20-day deadline provided in 28 U.S.C. § 3202(d) specifically relates to "judgment debtors" and not her. She argues because

---

[19] ECF Nos. 142 and 143.

she is not the judgment debtor here and the cases cited by the Bureau are inapposite, the Court should find her Second Motion to Quash is not untimely.

Pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, the government has certain remedies to collect debts. One of those remedies is a writ of garnishment.[20] The notice and service requirements for postjudgment remedies to enforce judgments are set out in 28 U.S.C. § 3202, and subsection 3202(b) sets out notice language.[21] Under subsection 3202(c), a copy of the notice and the application for writ must be served on the judgment debtor and on "each person whom the United States, after diligent inquiry, has reasonable cause to believe has an interest in property to which the remedy is directed."

Subsection 3202(d) permits the judgment debtor to move to quash the writ of garnishment by requesting, within 20 days after receiving the section 3202(b) notice, that the court hold a hearing. Likewise, the postjudgment garnishment statute, 28 U.S.C. § 3205(c)(5), permits the judgment debtor or the United States to file a written objection to the garnishee's answer and request a hearing within 20 days after receipt of the answer. Both subsections, §§ 3202(d) and 3205(c)(5), setting 20-day deadlines for objecting and requesting a hearing, reference only the judgment debtor or the United States and do not expressly mention an interested party or a judgment debtor's spouse.

In *United States v. Krehbiel*, a beneficiary of a deceased judgment debtor's 401(k) retirement account filed an objection to the writ of continuing garnishment of the 401(k) account

---

[20] 28 U.S.C. § 3205.

[21] Such notice language includes the statement, "If you want a hearing, you must notify the court within 20 days after you receive this notice." 28 U.S.C. § 3202(b).

as an interested party.[22]  The court found the interested party could participate in the proceedings to assert her interest in the property subject to garnishment,[23] but overruled her objection on the grounds that she did not request a hearing, as required by 28 U.S.C. §§ 3205(c)(5) and 3202(d), and did not raise a valid basis affecting the garnishment.[24]  The court did note that it had discretion, on its own initiative or upon motion by an interested party, to "make an order denying, limiting, conditioning, regulating, extending, or modifying" the use of any enforcement procedure under 28 U.S.C. § 3013, but found the objection did not raise a valid basis affecting the writ of garnishment. Other courts have applied the 20-day deadline for requesting a hearing to spouses of judgment debtors.[25]

Although the cited cases are not binding precedent, the Court finds persuasive the reasoning of those cases finding the 20-day deadline for requesting a hearing applies to the interested spouse of a judgment debtor, even though the statutes providing for a hearing only expressly reference a judgment debtor. The statute under which Melissa Carnes filed her motion

---

[22] No. 05-10117-EFM, 2021 WL 965968, at *1-3 (D. Kan. Mar. 15, 2021).

[23] *Id.* at *4 (citing *United States v. Kollintzas*, 501 F.3d 796, 801 (7th Cir. 2007) and *United States v. Duran*, 701 F.3d 912, 915 (11th Cir. 2012)).

[24] *Id.* (applying 28 U.S.C. §§ 3202(d) and 3205(c)(5)'s provisions for requesting a hearing to the interested party)*.

[25] *See United States v. Banks*, No. 3:11-cv-3523-L, 2013 WL 357823, at *3 (N.D. Tex. Jan. 10, 2013) (finding request for hearing filed by the spouse of the judgment debtor untimely under 28 U.S.C. § 3205(c)(5)); *United States v. Egubuchunam*, No. 3:15-cr-519-L(03), 2021 WL 6063641, at *5 (N.D. Tex. Dec. 21, 2021) (finding request for hearing by spouse of judgment debtor untimely because it was not made within the time required by sections 3202 and 3205); *United States v. Crosby*, No. 2:22-mc-00179-JAM-KJN, 2022 WL 3211761, at *3 (E.D. Cal. Aug. 9, 2022) (finding neither defendant nor his spouse timely filed a request for a hearing under 28 U.S.C. § 3202(d)). *But see Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 05-cr-621 (RJS), 2022 WL 35422, at *3 (S.D.N.Y. Jan. 3, 2022) (finding the Federal Debt Collection Procedures Act does not explicitly state that its timing rules apply to objections filed by third parties).

to quash the writs of garnishment, 28 U.S.C. § 3202(d), only provides that a judgment debtor may move to quash.[26] If an interested spouse, such as Ms. Carnes, seeks to avail herself of the procedures for objecting to a writ of garnishment afforded by the statutes, then she should also be subject to the limitations of those procedures as well. The Court concludes that the 20-day deadlines set out in 28 U.S.C. §§ 3202(d) and 3205(c)(5) for requesting a hearing apply to interested spouse Melissa Carnes even though she is not the judgment debtor.

The Notice served upon Melissa Carnes on April 28, 2023, notified her that she had 20 days from receipt of the Notice, or until May 22, 2023, in which to file a motion to quash the writ of garnishment directed to garnishee Morgan Stanley pursuant to 28 U.S.C. § 3202(d). Melissa Carnes timely filed her First Motion to Quash, which included a request for hearing, on Monday, May 22, 2023.  Her motion sought to quash just one Morgan Stanley account—Account 3581. The Amended Answer of Garnishee Morgan Stanley was filed on May 19, 2023, the Friday prior to the May 22, 2023 deadline. The Amended Answer listed six brokerage accounts and, for the first time, identified the accounts by the last three digits of their account numbers. In mid-June 2023 and before the First Motion to Quash was fully briefed, the Bureau filed motions releasing the garnishment of some of the accounts at issue in the First Motion to Quash. Melissa Carnes filed her Second Motion to Quash on August 14, 2023, seeking to quash two additional Morgan Stanley brokerage accounts.

In light of these events, the Court in its discretion finds Melissa Carnes' Second Motion to Quash should not be denied as untimely. Even though it was untimely filed almost 90 days after

---

[26] *See* 28 U.S.C. § 3202(d) ("[T]he judgment debtor may move to quash the order granting" the remedy to enforce the judgment.).

receipt of Morgan Stanley's Amended Answer, Melissa Carnes' First Motion to Quash was timely and already sought to quash the garnishment as to one of the Morgan Stanley accounts. Furthermore, the First Motion was based upon the limited information provided in Morgan Stanley's original answer, which provided no account numbers. The Second Motion to Quash specifically identified only two additional Morgan Stanley brokerage accounts that she claimed are assets of the MCC Trust and raises no new arguments for quashing the garnishment. Furthermore, Melissa Carnes explains that she filed her Second Motion to Quash because she inadvertently omitted two Morgan Stanley accounts from her First Motion. Under these circumstances, the Court will not deny the Second Motion to Quash summarily merely on the basis of untimeliness.

## IV.      LEGAL ANALYSIS – WHETHER TO QUASH THE SUBECT WRITS OF GARNISHMENT

Again briefly and as will be discussed in much greater detail below, Melissa Carnes, as trustee of the MCC Trust, requests an order quashing the writs of garnishment for Morgan Stanley Accounts 3581, 3717, and 9204, and Country Club Bank Account 5420 because she claims those accounts are not owned by judgment debtor James Carnes, nor does he have a substantial nonexempt interest in them. In opposition, the Bureau contends James Carnes has an equitable interest in the Morgan Stanley and Country Club Bank accounts that is subject to garnishment, even if the accounts are held nominally in the name of the MCC Trust.[27]

---

[27] The Bureau bases its argument on the Tenth Circuit case *In re Krause*, 637 F.3d 1160, 1164 (10th Cir. 2011), which held that a debtor who fraudulently transfers assets "retains equitable ownership of the assets and those assets remain subject to attachment."

## A.  The Issue Presented

The pivotal issue here is whether the judgment debtor, James Carnes, has an equitable interest in property owned by the MCC trust—the funds in the subject Morgan Stanley and Country Club Bank accounts—that is subject to garnishment by the Bureau.

## B.  Applicable Law

The procedures applicable to postjudgment writs of garnishment are set forth in 28 U.S.C. § 3205, which provides a court may issue a writ of garnishment against property in which a judgment debtor has "a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor."[28] Under the Federal Debt Collection Procedures Act ("FDCPA"), "property" is defined to include "any present or future interest, whether legal or equitable in real, personal . . . or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts)) . . . ."[29] Furthermore, co-owned property is subject to garnishment "to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located."[30]

A separate subchapter of the FDCPA allows the government to obtain relief against a fraudulent transfer.[31] 28 U.S.C. § 3306 identifies potential remedies in a fraudulent transfer case

---

[28] 28 U.S.C. § 3205(a).

[29] 28 U.S.C. § 3002(12).

[30] *Id.* As the Court is not addressing whether co-owned property is subject to garnishment, a discussion of the applicable state law is not necessary.

[31] 28 U.S.C. § 3301–08.

and "provides the Government with broad relief to recoup money lost in fraudulent transfers."[32] One of the remedies is "avoidance of the transfer or obligation to the extent necessary to satisfy the debt to the United States."[33]

### C.      Burden of Proof

The parties offer little argument or authority on the applicable burden of proof under the circumstances and facts presented here. The Bureau cites the general statutory provision, "[t]he party objecting shall state the grounds for the objection and bear the burden of proving such grounds," provided in 28 U.S.C. § 3205(c)(5). But, some additional analysis is warranted.

An interested third party may object to a garnishment to assert his or her interest in the garnished property.[34] The party objecting to the garnishee's answer does bear the ultimate burden of proof.[35] However, the Court has not identified any authority from this Circuit addressing whether and how the burden shifts when, as in this case, an interested third party offers evidence disputing the judgment debtor's ownership of garnished property and the government responds claiming the judgment debtor has an equitable interest in the garnished property.

---

[32] *Consumer Fin. Prot. Bureau v. Carnes*, No. 23-2151-DDC-TJJ, 2023 WL 6143307, at *7 (D. Kan. Sept. 20, 2023) (citing *United States v. Septon*, No. 14-cv-1139 (PAM/JSM), 2016 WL 3030237, at *6 (D. Minn. May 26, 2016)).

[33] 28 U.S.C. § 3306(a)(1).

[34] *See Krehbiel,* 2021 WL 965968, at *4 (an interested party can participate in the proceedings to assert his or her interest in the property subject to garnishment); *Kollintzas*, 501 F.3d at 801 ("The FDCPA's third-party notice requirement and the provision regarding jointly owned property together imply that nonparties with an interest in the targeted property may participate in the collection proceedings for the purpose of asserting their interest in the property.").

[35] *See* 28 U.S.C. § 3205(c)(5) ("The party objecting shall state the grounds for the objection and bear the burden of proving such grounds.")

In *United States v. Devries*,[36] the court addressed who bears the burden of proving ownership of garnished property in the context of a non-party motion for return of property and to quash a garnishment under 28 U.S.C. § 3205(c)(5). The court concluded the government must make "an initial showing that there is basis to believe the garnished property is owed to [or owned by] the judgment debtor."[37] If the government makes this initial showing, then the "third-party bears the burden of proving that he or she is the rightful owner of the property and that the debtor has no claim to it."[38] The court noted this is similar to the standard used in civil forfeiture proceedings, 18 U.S.C. § 983(c)(1), where the initial burden is on the government to prove by a preponderance of the evidence that the defendant's property is subject to forfeiture.[39]

The Court finds the above discussion in *Devries* persuasive and uses it to determine the burden of proof to be applied in analyzing the motions to quash at issue here. If an interested party offers evidence disputing ownership of the garnished property, the government must show a basis for its belief the garnished property is owned by the judgment debtor. This would require the government to present evidence in this case to support its belief the garnished accounts are equitably owned by the judgment debtor because they were funded by the judgment debtor's fraudulent transfers. Once the government makes this showing, then the burden shifts back to the interested party to provide evidence showing the garnished accounts were not funded by the judgment debtor's fraudulent transfers.

---

[36] 473 F. Supp. 3d 901, 905–07 (N.D. Iowa 2020).

[37] *Id.*

[38] *Id.* at 907.

[39] *Id.*

**D.     Melissa Carnes' Motions to Quash**

Keeping in mind this framework regarding the burden of proof, the Court addresses Melissa Carnes' motions to quash the Morgan Stanley and Country Club Bank Accounts at issue and the related briefing. Melissa Carnes attaches her Declarations stating that all four accounts are "wholly owned by" the MCC Trust, and James Carnes does not own, in full or part, those accounts.[40] This satisfied her initial burden to present evidence disputing ownership of the garnished accounts. The burden then shifted to the Bureau to show the garnished accounts are equitably owned by the judgment debtor as previously asserted generally by the Bureau.

**E.     The Bureau's Responses**

In its Response, the Bureau recounts the following allegations from its Fraudulent Transfer Action:

> [A]fter becoming aware of the Bureau's investigation, James Carnes made four transfers from the JRC Trust to the MCC Trust account at Stephens, Inc. (Stephens). James Carnes was on notice of the Bureau's investigation in January 2013. On June 3, 2013, James Carnes transferred $2,200,000 from the JRC Trust account to the MCC Trust Account at Stephens. On December 5, 2013, James Carnes transferred $7,000,000 from the JRC Trust account to the MCC Trust account at Stephens. Shortly thereafter, on or about December 19, 2013, James Carnes transferred $3,117,325 from the JRC Trust account to the MCC Trust account at Stephens. On November 18, 2015, the day after the Bureau informed James Carnes' counsel it would be filing a lawsuit against him, James Carnes transferred $608,281.25 from the JRC Trust to the MCC Trust account at Stephens.[41]

The Bureau further alleges that after James Carnes transferred approximately $12.3 million from the JRC Trust to the MCC Trust account at Stephens, Inc. ("the Stephens Account"), funds from

---

[40] Decls. of Melissa Carnes, ECF Nos. 128-1 and 159-1.

[41] Pl.'s Resp., ECF No. 136, at 6 (internal references to Fraudulent Transfer Action Compl. omitted).

the Stephens Account were ultimately transferred into the Morgan Stanley Accounts at issue here. Funds from the Stephens Account were also used to make purchases on behalf of the MCC Trust, including a $500,000 investment in Mer-Sea & Co., LLC ("Mer Sea"), Mer-Sea then made deposits into Country Club Bank Account 5420.

With regard to Morgan Stanley Account 3717, the Bureau attaches the September 5, 2023 Declaration of Kathleen Nolan to support its claim that Account 3717 was funded by some of the transfers made by James Carnes from the JRC Trust in 2013 and 2015—after he learned the Bureau was investigating his company—to the Stephens Account.[42] Although nominally held in the name of the MCC Trust, the Bureau contends, relying upon the September 5, 2023 Nolan Declaration, that the funds held in Account 3717 can be traced back to James Carnes through a series of fraudulent transfers from the Stephens Account.[43] The Bureau alleges it has traced funds deposited into Account 3717, at least through June 30, 2022, to James Carnes.[44]

With respect to Morgan Stanley Account 3581, the Bureau relies upon both the June 12 and September 5, 2023 Declarations of Kathleen Nolan to support its claim that the account received March and August 2019 transfers of at least $26,235.44 from another Morgan Stanley account (ending 792) owned by the JRC Trust.[45] As such, the Bureau argues James Carnes is at

---

[42] Sept. 5, 2023 Decl. of Kathleen Nolan, ECF No. 160-1, at 7–9.

[43] *Id.*, ¶¶ 9, 12, 14, 16, 17, and 32.

[44] The Bureau states that in response to a subpoena, Morgan Stanley produced account records from July 2015 through June 2022. As a result, the Bureau's analysis is limited to those account statements. Resp., ECF No. 160, at 7 n.3.

[45] June 12, 2023 Nolan Decl., ECF No. 136-1, at 20–22 and Attachs. O, P, and Q; Sept. 5, 2023 Nolan Decl., at 5–7.

least a co-owner of co-mingled funds in Account 3581 and at least that portion of the funds should remain frozen.[46]

With respect to Morgan Stanley Account 9204, again relying upon the September 5, 2023 Nolan Declaration, the Bureau argues Account 9204 has been funded solely by Morgan Stanley accounts 3717 and 3581, and contains funds transferred by James Carnes after he learned of the Bureau's claims against him. The referenced Declaration traces a number of transfers from Accounts 3717 and 3581 into Account 9204 in August and December 2021 and January 2022.[47] As already discussed, the Bureau contends, based upon the tracing performed in the Nolan Declarations, that the funds in Morgan Stanley Accounts 3581 and 3717 are also traced back to fraudulent transfers by James Carnes.

With respect to Country Club Bank Account 5420, the Bureau again references the June 12, 2023 Declaration of Kathleen Nolan[48] to trace the funds from the Stephens Account to make purchases on behalf of the MCC Trust, including a $500,000 investment in Mer-Sea & Co., LLC ("Mer Sea"), which then made multiple deposits into Country Club Bank Account 5420. Attached to the June 12, 2023 Nolan Declaration is a check dated January 12, 2016, signed by Melissa Carnes and drawn on the Stephens Inc. Account for $500,000 payable to Mer-Sea to purchase a membership interest in the LLC.[49] That same day, James Carnes signed a letter of personal

---

[46] Pl.'s Resp., ECF No. 136, at 8.

[47] Sept. 5, 2023 Nolan Decl., at 39–41.

[48] June 12, 2023 Nolan Decl., ECF No. 136-1, at 2–4.

[49] Attach. G to June 12, 2023 Nolan Decl., ECF No. 136-1.

guaranty for a loan from a banking institution to Mer-Sea up to $500,000.[50] The Declaration attaches exhibits showing that subsequently, in 2021 and 2022, multiple deposits were made into Country Club Bank Account 5420 from Mer-Sea.[51]

The Court finds the Bureau has made a sufficient showing through the detailed Nolan Declarations and exhibits that judgment debtor James Carnes appears to have an equitable ownership interest in Morgan Stanley Accounts 3581, 3717, and 9204, and Country Club Bank Account 5420. The Declarations trace the allegedly fraudulent transfer of funds from the James Carnes and the JRC Trust ultimately to the MCC Trust's Morgan Stanley and Country Club Bank accounts at issue. The burden of proof therefore shifts to Melissa Carnes to show that those accounts were not funded by transfers from James Carnes or the JRC Trust.

### F.    Melissa Carnes' Replies

In her replies, Melissa Carnes argues again that James Carnes is no longer a trustee of the MCC Trust and that he has no interest in the referenced accounts, citing her Declarations in support. She also argues the Bureau's allegations in this case are based upon unsupported fraudulent transfer *allegations* that are currently before the court in the entirely separate Fraudulent Transfer Action. She argues "there has been no determination that the transfers were in fact fraudulent."[52]  She implores the Court to disregard these allegations for purposes of her motions to quash and "assume such allegations, in addition to being unproven, are uniformly in dispute."[53]

---

[50] Attach. H to June 12, 2023 Nolan Decl.

[51] Attach. E to June 12, 2023 Nolan Decl.

[52] Reply, ECF No. 161, at 4-5.

[53] Am. Reply, ECF No. 151, at 4.

Melissa Carnes argues generally that the Bureau is unable to show that it has a legal right to garnish all of the funds in some of the subject accounts. Specifically with regard to Country Club Bank Account 5420, she argues even if the Bureau could prove the MCC Trust's investment in Mer-Sea was funded by fraudulent transfers and it received distributions from Mer-Sea, the Bureau offers no factual or legal support that it is entitled to garnish all of the funds in that Account. Additionally, Melissa Carnes argues even if the Bureau was entitled to recover some amount, that amount should be determined after discovery, including expert witness analysis, in the separate Fraudulent Transfer Action.

### G.    Melissa Carnes Has Not Met Her Burden

The Bureau has provided detailed Declarations from Kathleen Nolan tracing the flow of funds from James Carnes and the JRC Trust into the subject accounts. The Court finds this detailed tracing and accounting with respect to the garnished accounts persuasive. Once the Bureau supplied this information to support its claim to the garnished funds, the burden shifted to Melissa Carnes. However, Ms. Carnes demurred once again to the conclusory statements in her Declarations that the funds in the accounts are wholly owned by her or the MCC Trust and that James Carnes has no interest in them. She did not attempt to refute any of the detailed tracing of funds set out in the Nolan Declarations. The Court finds the generic conclusory representations in Melissa Carnes' Declarations are not sufficient to satisfy her burden to rebut the detailed and extensive tracing of funds set out in the Nolan Declarations.

This conclusion is further supported by the recent rulings of District Judge Crabtree in the Fraudulent Transfer Action. Melissa Carnes notes the question of whether judgment debtor James Carnes fraudulently transferred assets to the MCC Trust—the purported owner of the Morgan Stanley and Country Club Bank accounts at issue—is currently being litigated in the Fraudulent

18

Transfer Action. That is true. However, subsequent to Melissa Carnes' briefing in this case in which she argued no determination had been made on the fraudulent transfers claim, on November 9, 2023, Judge Crabtree denied Melissa Carnes' motion to quash the prejudgment writs in that case.[54] He did so based upon the Bureau's showing of the probable validity of the debt in dispute under 28 U.S.C. § 3101(c) and reasonable cause to believe James Carnes assigned, disposed, removed, concealed, wasted, or destroyed property with effect of hindering, delaying, or defrauding the United States under 28 U.S.C. § 3101(b).[55] Judge Crabtree examined the badges of fraud used to show the probable validity of the debt and concluded they "support the conclusion that James Carnes fraudulently transferred millions of dollars to the MCC Trust to hinder the Bureau from collecting on its judgment against him and his firm."[56] Melissa Carnes argued in that case that some money flowed back into the MCC Trust from the JRC Trust thus indicating the transfers were not fraudulent. Judge Crabtree found, however, that James Carnes transferred $12.9 million from the JRC Trust to the MCC Trust, while only $3.1 million has returned to the JRC Trust, James Carnes, or his LLC's.[57] These findings in the Fraudulent Transfer Action support the Bureau's request to keep the garnished accounts at issue here frozen, pending a final determination

---

[54] *Consumer Fin. Prot. Bureau v. Carnes*, No. 23-2151-DDC-TJJ, 2023 WL 7407576 (D. Kan. Nov. 9, 2023).

[55] *Id.* at *12–17.

[56] *Id.* at *13. Notably, Kathleen Nolan testified and was cross-examined at length by counsel for Melissa Carnes, prior to the referenced rulings by Judge Crabtree. *Id.* at *9.

[57] *Id.* at *15. This $12.9 million figure is consistent with the amount of the transfers from the JRC Trust to the MCC Trust identified in the Declarations of Kathleen Nolan and the assertions of the Bureau in this case.

in the Fraudulent Transfer Action or further discovery in this case to support release of the subject funds.

As for Melissa Carnes' argument that James Carnes has no interest in the garnished accounts and they should be unfrozen because he is no longer a Trustee of the MCC Trust, the Court is not persuaded by the argument. The Amended Answer filed by garnishee Morgan Stanley describes James Carnes' interest in the accounts as "Spouse/Trustee." But, even if James Carnes is no longer a trustee of the MCC Trust, the garnishee's answer shows he still may retain an interest in the property as a spouse. If that means James Carnes is a co-owner of the funds as Melissa Carnes' spouse, then James Carnes would have a substantial nonexempt interest in the funds and they would be subject to garnishment. In any event, given the evidence presented by the Bureau that James Carnes holds an equitable interest in the funds in those accounts, they should remain frozen.

### H.      Untraced Account Balances

The Bureau acknowledges it has not traced back to James Carnes or the JRC Trust the entire account balance of Morgan Stanley Accounts 3717 and 3581, as reported in the garnishee's amended answer. For example, the Bureau acknowledges that for Morgan Stanley Account 3717, it was only able to trace funds through June 30, 2022 since it has only obtained account records until then in discovery thus far. Although it has traced $189,395.64 to transfers made by James Carnes to the MCC Trust, in the last eleven months this account has increased in value by more than five hundred thousand dollars.[58] The Bureau argues this significant increase in account funds

---

[58] Pl.'s Resp., ECF No. 160, at 9. For Morgan Stanley Account 3581, the Bureau states it has traced $26,235.44 into this account and at least this amount should remain frozen. Pl.'s Resp., ECF No. 136, at 8.

warrants maintaining the freeze of these accounts to allow it to conduct further discovery concerning the source and ownership of the funds. The Court agrees with the Bureau. The increase in the accounts' balance, combined with the already-established transfer of $12.9 million from the JRC Trust to the MCC Trust (while only $3.1 million has returned to the JRC Trust, James Carnes, or his LLC's), and the tracing already performed by the Bureau based on account records through June 30, 2022—showing significant funds flowed either directly or indirectly into these accounts from James Carnes or the JRC Trust—all support allowing further discovery concerning the source and ownership of the funds in Morgan Stanley Accounts 3717 and 3581. The Court therefore finds the funds in these accounts, as well as the funds in Morgan Stanley Account 9204 and Country Club Bank Account 5420, should remain frozen until there is a final determination in the Fraudulent Transfer Action or further discovery warrants further consideration of whether any or all of the accounts at issue should be released.

**IT IS THEREFORE ORDERED** that Melissa Carnes' First Motion to Quash (ECF No. 128) is found moot in part and denied without prejudice in part, and her Second Motion to Quash Additional Morgan Stanley Accounts (ECF No. 159) is denied without prejudice.

**IT IS FURTHER ORDERED** that Morgan Stanley Accounts 3581, 3717, and 9204 and Country Club Bank Account 5420 shall remain frozen until such time as a final determination is made in the Fraudulent Transfer Action with respect to the accounts at issue or such time as further discovery warrants further consideration of whether any or all of the accounts at issue should be released.

**IT IS SO ORDERED.**

Dated December 11, 2023 at Kansas City, Kansas.

21

Teresa J. James
U. S. Magistrate Judge