IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CONSUMER FINANCIAL
PROTECTION BUREAU,**

Petitioner,

v.

**INTEGRITY ADVANCE, LLC, et al.,**

Respondents.

Case No. 21-206-DDC-TJJ

## MEMORANDUM AND ORDER

For several years, the Consumer Financial Protection Bureau (Bureau) has worked to collect a $43 million judgment it secured against respondent James R. Carnes. Mr. Carnes hasn't satisfied the judgment, so collection efforts continue.

In July 2023, the court issued a Charging Order under Kan. Stat. Ann. § 17-76,113(a) at the Bureau's request. *See* Doc. 155. The Order attached Mr. Carnes's interests in eight LLCs as part of the government's efforts to collect this judgment.[1] *See id.* at 3. Though Mr. Carnes didn't object at the time, he later filed a Motion to Alter or Amend the Charging Order (Doc. 158) and a Motion for Payment of Exempt Wages (Doc. 178). And the Bureau has filed a Consent Motion to Modify the Charging Order (Doc. 267) and another Application for a Charging Order (Doc. 207) to attach interests in two more LLCs. All four motions are pending.

The parties dispute the scope of the Kansas charging order statute, asking the court to address a novel question of Kansas law: whether payments to Mr. Carnes as wages for services

---

[1] The Bureau submitted a proposed order with its application. *See* Doc. 158 at 2 (noting the proposed order).

rendered or loan repayments constitute "distributions" flowing from his LLC interest under Kan. Stat. Ann. § 17-76,113. *See generally* Doc. 158; Doc. 179. And they also disagree whether Mr. Carnes is entitled to his salary. *See* Doc. 178; Doc. 183. One of the charged LLCs—solely managed by Mr. Carnes—has held his salary unpaid to avoid violating the Charging Order. *See generally* Doc. 178; Doc. 183. But a wrinkle may preclude the court from ruling on these motions.

Federal Rule of Civil Procedure 69 guides federal courts when enforcing judgments. It instructs federal courts to follow the procedure of the state, with one important caveat—"a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). Because the Bureau is a federal entity, it collects judgment debts under the Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001–3008.[2] The FDCPA thus supplies relevant procedures here. *See Fed. Deposit. Ins. Corp. v. Greif*, No. 00-2170-KGG, 2020 WL 4436372, at *2 (D. Kan. Aug. 3, 2020) (mistakenly referring to the FDCPA as the Fair Debt Collection Practices Act, and explaining that the FDCPA is "a federal law controlling an agency of the federal government seeking to enforce a judgment").

The FDCPA "provides the *exclusive* civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001(a) (emphasis added). And the FDCPA preempts state law where inconsistencies exist. 28 U.S.C. § 3003(d). Congress designed this statute to provide "for nationwide procedural uniformity in the collection of sums owed the United States." 136 Cong. Rec. 36926 (1990) (statement of Rep. Fish); *see also Greif*, 2020 WL 4436372, at *2 ("Prior to the FDCPA, the diversity of states' laws with respect to the federal debt collection

---

[2] The FDCPA provides "procedures for the United States . . . to recover a judgment on a debt[.]" 28 U.S.C. § 3001(a). "United States" includes federal agencies, commissions, boards, "or other entit[ies]." 28 U.S.C. § 3002(15). And a "debt" includes "an amount that is owing to the United States on account of a . . . penalty, restitution, [or] damages[.]" 28 U.S.C. § 3002(3)(B).

interfered greatly with the efficiency of enforcement activity, leading Congress to create the FDCPA in 1990 in order to alleviate that conflict.").

The Bureau never referenced the FDCPA in its original charging order application. *See generally* Doc. 67. Instead, the Bureau cited Kansas law, which supplies the proper procedure, but only when a federal statute doesn't govern. *See* Fed. R. Civ. P. 69(a)(1). But one does appear to govern here—or at least, it might.

Unlike the Kansas statutes, the FDCPA doesn't have a provision called "charging orders"—or anything like it. *See* Kan. Stat. Ann. § 17-76,113. But the FDCPA does include a post-judgment collection mechanism labeled "Garnishment." 28 U.S.C. § 3205. This provision provides:

> A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person[3] other than the debtor, in order to satisfy the judgment against the debtor. Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located. A court may issue simultaneous separate writs of garnishment to several garnishees. A writ of garnishment issued under this subsection shall be continuing and shall terminate only as provided in subsection (c)(10).

28 U.S.C. § 3205(a). The Bureau previously has used this collection mechanism in this case, but never has used it to access Mr. Carnes's LLC interests.[4] *See, e.g.*, Doc. 68 at 1. And the court's

---

[3]   The FDCPA defines "person" to include "a corporation, a partnership, an unincorporated association . . . or any other public or private entity[.]" 28 U.S.C. § 3002(10).

[4]   The court acknowledges that the parties identify the garnishment provision in their briefs, but only in the context of wages, not LLC interests. Mr. Carnes suggests that the FDCPA garnishment provision applies to payments "unrelated to [Mr. Carnes's] ownership interests" in the LLCs. Doc. 158 at 7. And, in the same breath, Mr. Carnes argues the existing Charging Order should apply solely to "payments to [Mr. Carnes] by virtue of his ownership interests[.]" *Id.* The Bureau disagrees, arguing that the charging order statute encompasses payments for things like Mr. Carnes's salary. *See generally* Doc. 179. The parties, in support of their respective arguments, cite a number of cases where this court issued charging orders under the Kansas statute. *See* Doc. 158 at 5 (first citing *BMO Harris Bank N.A. v. Smith*, No. 16-2815-DDC-TJJ, 2020 WL 2914838, at *1 (D. Kan. June 3, 2020), *vacated*, 2021 WL 3915079 (D. Kan. Apr. 13, 2021); and then citing *Vision Mktg. Res., Inc. v. McMillin Grp., LLC*, No. 10-2252-KHV,

not sure why. After all, the FDCPA garnishment provision identifies similar business entities as the proper garnishees when the garnished property is an ownership interest in those kinds of entities. 28 U.S.C. § 3205(b)(2).

This court must follow the proper procedure—supplied by applicable federal law. *See* Fed. R. Civ. P. 69(a)(1). So, the court requests additional briefing from the parties about: (1) the potential preemptive effect of the FDCPA on the Kansas charging order statute, Kan. Stat. Ann. § 17-76,113; and (2) if the FDCPA preempts the Kansas statute, the effect on the parties' pending motions. The parties aren't permitted to submit responsive briefs but may address any responsive arguments at a virtual status conference following the briefing deadline. D. Kan. Rule 7.1(d)(3) supplies the controlling 15-page limit.

**IT IS THEREFORE ORDERED THAT** the parties must file briefs explaining their positions on FDCPA preemption of Kan. Stat. Ann. § 17-76,113 by December 4, 2024.

**IT IS FURTHER ORDERED BY THE COURT THAT** a ZOOM STATUS CONFERENCE to address these issues is set for December 19, 2024, at 4:00 p.m. before District Judge Daniel D. Crabtree. The parties will receive an invitation via email with the meeting details and access instructions before the conference.

**IT IS SO ORDERED.**

**Dated this 15th day of November, 2024, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**

---

2015 WL 4390071, at *7–8 (D. Kan. July 15, 2015)); Doc. 179 at 10–11 (first citing *Oberg v. Lowe*, No. 20-2055-JWB-GEB, 2021 WL 495043, at *3 (D. Kan. Jan. 4, 2021), *report and recommendation adopted*, 2021 WL 492879 (D. Kan. Feb. 10, 2021); and then citing *Vision Mktg.*, 2015 WL 4390071, at *7). But none of those cases involved the federal government collecting a judgment debt. So, the FDCPA wasn't in play. And if the FDCPA preempts the LLC charging order statute, the court must use different procedural mechanisms and needn't resolve the parties' pending motions under Kansas law.