IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CONSUMER FINANCIAL<br>PROTECTION BUREAU,<br><br>                            Plaintiff,<br><br>v.<br><br>INTEGRITY ADVANCE, LLC and<br>JAMES R. CARNES,<br><br>                            Defendants. | Case No. 21-mc-206-DDC-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Consumer Financial Protection Bureau (the "Bureau") has filed a Motion to Compel James R. Carnes ("Carnes") to Respond to the Bureau's Second Requests for Production of Documents (ECF No. 269). The Bureau requests an order, pursuant to Fed. R. Civ. P. 37(a), compelling Defendant Carnes to produce communications with his consulting clients and documents reflecting work he performed for his clients, responsive to Requests for Production ("RFPs") 26 and 27, as modified by the Bureau. Carnes opposes the motion, asking the Court to deny the motion and adopt his alternative less-burdensome, sample-based proposal for producing responsive documents. As explained below, the Court grants the Bureau's motion.

**I.     Background of Case and Discovery Dispute**

The Bureau commenced this miscellaneous action seeking an order and judgment enforcing the January 11, 2021 Final Order issued in its administrative proceedings.[1] The Final Order requires Carnes and his company, Integrity Advance, LLC ("Integrity Advance"), to pay

---

[1] Pet. to Enforce the Bureau's Jan. 11, 2021 Final Order, ECF No. 1.

more than $38 million in restitution for losses caused by an illegal payday lending scheme.[2] In addition, the Final Order imposed a $7.5 million civil penalty against Integrity Advance and a $5 million civil penalty against James Carnes.[3] On July 30, 2021, the Court granted the Bureau's petition[4] and entered Judgment in favor of the Bureau incorporating the Final Order.[5] As of August 30, 2024, Carnes has paid approximately $1.9 million toward the Judgment.[6]

The Bureau has undertaken collection efforts against Carnes and third parties believed to have Carnes' property or funds in their possession, custody, or control. This includes issuance of writs of garnishment to Carnes' clients,[7] and a charging order against Carnes' LLC ownership interest in his consulting business, Willowbrook Marketing, LLC ("Willowbrook Marketing").[8] Carnes filed motions and claims for partial wage exemptions from garnishment, arguing that wages

---

[2] Final Order, *Integrity Advance, LLC and James R. Carnes*, CFPB No. 2015-CFPB-0029 (Jan. 11, 2021), ECF No. 2-1, at 67–68.

[3] *Id.*

[4] Mem. & Order, ECF No. 21.

[5] Judgment in a Civil Case, ECF No. 22.

[6] Cohen Decl. ¶ 5, ECF No. 270.

[7] Writs of Garnishment, ECF Nos. 110 and 111.

[8] On December 31, 2024, District Judge Crabtree entered a Memorandum and Order (ECF No. 323) vacating the Charging Order (ECF No. 155) previously entered against Willowbrook Marketing and seven other LLCs, finding the garnishment provision of the Federal Debt Collections Procedure Act ("FDCPA"), 28 U.S.C. § 3205, pre-empts the Kansas limited liability company charging order statute, K.S.A. 17-76,113(a), in this case. *See* ECF No. 323 at 2, 5, 7.

owed to him for work performed for his consulting clients are partially exempt from the Bureau's collection efforts.[9]

As part of its collection efforts, the Bureau has sought post-judgment discovery regarding Carnes' consulting work. Pertinent to the instant motion, Carnes disclosed in response to the Bureau's interrogatories that he performed consulting work for three clients: TKC Worldwide, LLC ("TKC"); Funding Metrics, LLC ("Funding Metrics"); and a third redacted client[10] (collectively referred to as "Clients"). The Bureau also deposed Carnes on April 5, 2024, questioning him about his relationship with the Clients and the payments he receives from them. Carnes testified there are no written agreements or invoices for work he allegedly performs on behalf of his Clients.[11] Carnes however did testify he had records reflecting his communications concerning the consulting work and work he performs for the Clients.[12]

On June 18, 2024, the Bureau served a second set of RFPs upon Carnes, consisting of RFPs 25–31. Carnes responded to RFPs 25, and 28–31, but objected to RFPs 26 and 27, which requested Carnes produce, respectively, his communications with his clients, and documents reflecting work performed by Carnes on behalf of his clients. The Bureau's initial versions of RFP 26 and 27 sought:

> All Documents reflecting communications between [] Carnes and any Client describing or referring to personal or consulting services" provided by [] Carnes,

---

[9] *See* Carnes' Motion to Alter or Amend Charging Order, ECF No. 158; Carnes' Motion for Payment of Exempt Wages from Willowbrook Marketing, LLC, ECF No. 178. Judge Crabtree's December 31, 2024 Memorandum and Order (ECF No. 323) also denied both of these motions as moot.

[10] The Court has previously granted Carnes' request that the identity of this client be redacted. *See* Order Permitting Redaction, ECF No. 180.

[11] Carnes Dep. 47–50, ECF No. 270.

[12] Carnes Dep. 50–51, 238–239.

3

whether directly or through Willowbrook Marketing, LLC, consistent with Mr. Carnes' April 5, 2024 deposition testimony that he "communicate[d] in the ordinary course of [his] consulting with representatives of [the Client] by email about the work [he] was performing."

All Documents reflecting work performed by [] Carnes, "whether directly or through Willowbrook Marketing, LLC, on behalf of any Client, including any reports, summaries, recommendations, spreadsheets, or analyses, consistent with Mr. Carnes' testimony that he performed work "specific to projects" which would be a "record that would reflect [his] work" for his Clients.[13]

Carnes objected to RFPs 26 and 27 based upon overbreadth, burdensomeness, proportionality, confidentiality/trade secrets, and attorney-client and "accountant-client" privilege. Carnes objected to these requests "as written" because they would require him to locate, gather, and produced an enormous volume of documents. Carnes did produce sixteen documents, including annual tax records and two affidavits from May 2024. As part of the parties' efforts to resolve the instant dispute, the Bureau offered to modify RFPs 26 and 27 by limiting them temporally to "June 2023 to present," to address Carnes' burden objections.

On August 15, 2024, the Court conducted a D. Kan. Rule 37.1(a) pre-motion discovery conference on the dispute. Its order, entered the next day, memorialized the following overarching guidance provided to the parties with respect to Carnes' responses and objections to RFPs 26 and 27:

> James Carnes' objections that the RFPs are overly broad, unduly burdensome, and not proportional to the needs of the case can be sufficiently addressed by Plaintiff's proposed limitation modifying RFPs 26 and 27 to the time period "June 2023 to present."
>
> James Carnes' alternative proposal he produce a one-month randomly-selected sample subject to an *in camera* review is too limited and not warranted as the temporal limitation offered by Plaintiff addresses any proportionality burdens and concerns.

---

[13] Bureau's Second RFPs, ECF No. 270, at 34.

> James Carnes' confidentiality concerns about disclosure of trade secrets or similar proprietary business information can be addressed by modification of the existing protective order.[14]

The Court ordered the parties to make further renewed good-faith efforts to confer regarding their discovery disputes over RFPs 26 and 27, taking into account the guidance provided at the discovery conference.

The parties held an additional meet-and-confer conference on August 21, 2024, at which Carnes suggested a new proposal that would be less burdensome than responding to the Bureau's RFPs 26 and 27, as modified. Specifically, Carnes proposed that he would produce all responsive documents for two months selected by the Bureau and run targeted searches for the entire one-year period using search terms designated to identify any documents that mention the Bureau's collection efforts (e.g., "CFPB," "collection," and "garnishment"). The Bureau rejected this proposal, but offered to exclude client Funding Metrics, contingent on Carnes' agreement that Funding Metrics' payments were not at issue in any pending or future motions. Carnes declined the proposal but offered to expand the sampling period to six months. The Bureau declined this expanded six-month sampling proposal and filed this motion.

## II.     Applicable Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[14] Discovery Conference Order, ECF No. 266.

The requested information must be "nonprivileged, relevant, and proportional to the needs of the case to be discoverable."[15] Rule 26(b)(2)(C)(i) also requires the court to limit the frequency or extent of discovery otherwise allowed if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

A party serving requests for production of documents may move for an order compelling discovery under Rule 37(a) if the objecting party fails to produce the documents requested under Rule 34.[16] The burden is on the nonmoving party to support its discovery objections with specificity and, where appropriate, with reference to affidavits and other evidence.[17]

### III. Current Discovery Dispute Regarding RFP 26 (Carnes' Client Communications) and RFP 27 (Documents Reflecting Carnes' Work Performed for Clients)

Carnes continues to assert his objections that RFPs 26 and 27 are overly broad, unduly burdensome, and not proportional. He argues the short and long-term burdens associated with producing documents responsive to these now limited RFPs is extreme. Carnes estimates that the Bureau's one-year period would include approximately 2,200 responsive emails. Carnes contends the time and money associated with searching for, gathering, reviewing, and producing this many documents would be a significant burden for any individual, but the burden on him is even higher because the Bureau has garnished virtually all his assets and has frozen his consulting income since July 2023. Carnes also argues that the Bureau's dragnet-style discovery requests are not

---

[15] *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

[16] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[17] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

proportional to the needs of the case and the burdens on him and his non-party Clients would outweigh any marginal benefit of the discovery to the Bureau. Carnes states he communicates with his clients daily, often multiple times per day. Therefore, he contends there would be little benefit to the Bureau by requiring him to produce all these day-to-day consulting emails. Carnes also argues he and his Clients have already produced evidence that directly discusses their consulting relationships. This includes Carnes' verified interrogatory answers, declarations under oath, tax returns, and signed financial disclosures confirming the income he receives from the Clients is for consulting services. He further states his non-party Clients have confirmed these statements in sworn answers to writs of garnishment. Carnes further points to Funding Metrics' answer to a writ of garnishment that states he never had a membership interest in it and that it had compensated Carnes for his personal services.[18] Carnes further states TKC answered a writ of garnishment by stating, under penalty of perjury, that Carnes "has no ownership interest in TKC," that it retains Willowbrook Marketing as a consultant, and that it has paid Willowbrook Marketing an average of $50,000 per month for those consulting services.[19] Carnes urges the Court to deny the Bureau's motion and instead adopt his alternate proposal in which he produces all responsive documents for six months selected by the Bureau and runs targeted searches for the entire one-year period using search terms designed to identify any documents that mention the Bureau's collection efforts (e.g., "CFPB," "collection," and "garnishment"). Carnes claims adopting this approach will fulfill the Bureau's stated purpose at roughly half the burden to him and his Clients.

---

[18] Garnishee Funding Metrics' Answer, ECF No. 133, at 6.

[19] Garnishee TKC's Answer, ECF No. 137, at 5.

The Bureau argues the Court should reject Carnes' rehashing of the same arguments he already presented at the discovery conference and overrule Carnes' objections for failure to offer any affidavit or evidentiary support. The Bureau argues the contemporaneous documents requested by RFPs 26 and 27 are necessary to address the wages exemption issue that Carnes has raised in this case. With respect to Carnes' newest sampling-based proposal, the Bureau contends this proposal would significantly cut the scope of the Bureau's already narrowed discovery requests, and Carnes fails to explain how his most recent sampling proposal would meaningfully alter or change that burden or address his purported proportionality concerns.

Consistent with its prior guidance from the discovery conference, the Court finds Carnes' objections that RFPs 26 and 27 are overly broad, unduly burdensome, and not proportional to the needs of the case are sufficiently addressed by the Bureau's modification of RFPs 26 and 27 to the relatively limited time period "June 2023 to present." Even taking into account any new arguments Carnes asserted in his response to the Bureau's motion, the Court finds Carnes has not shown that producing responsive communications between him and his Clients and documents reflecting work he performed for these Clients, now limited to the "June 2023 to present" time period, would be unduly burdensome or disproportional to the needs of the case. Carnes summarily estimates, without any affidavit or evidentiary support, that responding to the modified RFPs 26 and 27 would yield approximately 2,200 documents. This sort of generic, unsupported overly burdensome argument is unpersuasive. Even if the estimate is presumed accurate, the Court does not find this to be an "extreme" burden upon him particularly if, as Carnes suggests, many of the responsive documents are day-to-day emails to his Clients.

The Court further finds the interrogatory answers, declarations, tax returns, and signed financial disclosures Carnes previously provided regarding his consulting relationship with

Clients do not render the communications and information sought by RFPs 26 and 27 unreasonably cumulative or duplicative. A key difference is that most of the information already provided by Carnes does not shed light on the nature and substance of the communications and alleged consulting work Carnes performed for these three Clients. The Bureau is entitled to Carnes' communications and documents reflecting work performed to ascertain whether they contradict or corroborate Carnes' position that funds from these Clients are wages for consulting work he performed and therefore partially exempt from garnishment. The likely benefit of this discovery is significant as it will bear on the ultimate resolution of Carnes' claims for partial wage exemptions from garnishment.[20]

The Court also declines to adopt Carnes' new alternative proposal that he produce all responsive documents for six randomly selected months and run targeted searches for the entire one-year period using search terms designed to identify any documents that mention the Bureau's collection efforts. The Court agrees with the Bureau that Carnes has not explained how his proposal of producing six months of responsive documents would appreciably reduce his burden of searching for and producing responsive documents for the June 2023 to present time period. The

---

[20] The Court is mindful of District Judge Crabtree's rulings in his December 31, 2024 Memorandum and Order (ECF No. 323). Although Carnes' Motion for Payment of Exempt Wages to his consulting company Willowbrook Marketing (ECF No. 178) was denied as moot in connection with vacating the LLC *charging order*, there was no ruling with respect to Carnes' claim for a partial wage exemption from *garnishment*. Indeed, in his Additional Briefing Regarding FDCPA Preemption (ECF No. 303), Carnes argued that "vacating the charging order [would] not resolve the core wage exemption issue" and requested the Court enter an order "(a) allowing him to pay out the partially exempt wages that have been held by Willowbrook Marketing for nearly eighteen months, and (b) holding that any future payments he receives for consulting work are partially exempt wages." Carnes also noted that on December 9, 2024 the Bureau filed applications for writs of garnishment under the FDCPA against Willowbrook Marketing and other LLC companies. Carnes stated that he "intends to file an exemption claim to [the Bureau's] new writ of garnishment to Willowbrook Marketing and will request a prompt hearing in accordance with the instructions attached to the writ." ECF No. 303, at 2 n.1. Thus, the core wage exemption from garnishment issue raised by Carnes appears to remain at issue in the case.

Court is also skeptical of Carnes' ability to craft acceptable and appropriate search terms and satisfy RFPs 26 and 27. Carnes' overly broad, unduly burdensome, and proportionality objections to RFPs 26 and 27 are overruled. Carnes shall produce documents responsive to the Bureau's RFPs 26 and 27, as modified by the Bureau to the time period "June 2023 to the present." If Carnes withholds any documents responsive to modified RFPs 26 and 27 on the basis of privilege, he shall contemporaneously produce a privilege log identifying the documents withheld.

With respect to Carnes' remaining objections for trade secrets/confidentiality, the parties state they have reached agreement on a protective order and submitted their proposed Modified Agreed Protective Order. The parties' proposed Modified Agreed Protective Order will be entered in conjunction with the entry of this Memorandum and Order.

**IT IS THEREFORE ORDERED** that the Bureau's Motion to Compel James R. Carnes to Respond to the Bureau's Second Requests for Production of Documents (ECF No. 269) **is granted**. Defendant James R. Carnes shall produce documents responsive to the Bureau's RFPs 26 and 27, as modified by the Bureau to the time period "June 2023 to the present," **within thirty (30) days from the date of this Memorandum and Order**.

**IT IS FURTHER ORDERED** that the parties' proposed Modified Agreed Protective Order will be entered in conjunction with the entry of this Memorandum and Order.

**IT IS SO ORDERED.**

Dated January 10, 2025, at Kansas City, Kansas.

_Teresa J. James_
Teresa J. James
U. S. Magistrate Judge

10